Sidney J. BROWN, Appellant,

v.

James R. COATES, Marion E. Coates, and
Margaret E. Brown, Appellees.

No. 13749.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 17, 1957.

Decided Jan. 31, 1958.

Petition for Rehearing In Banc Denied
March 14, 1958.

Mr. Brainard H. Warner, III, Washington, D. C., with whom Mr. Herman Miller, Washington, D. C., was on the brief, for appellant.

Mr. Harry A. Finney, Washington, D. C., with whom Mr. Dennis Collins, Washington, D. C., was on the brief, for appellees.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This is an appeal from a judgment entered on a verdict awarding appellees $7,059.00 compensatory and $7,500.00 punitive damages for an agent's breach of trust in a real estate transaction. Resolving all conflicts of evidence to conform with the verdict, the facts are these:

■ Having seen newspaper ads soliciting business from the public appellee Mrs. Coates telephoned the First Na-

tional Realty Company, a real estate brokerage firm entirely owned by appellant Brown, to arrange the sale of her home.[1] A salesman from the company inspected appellees' property and at the same time suggested that appellees might purchase a new house with the proceeds from the sale of the old one. Appellees and the saleman then looked at various properties and appellees finally agreed to buy one of the houses shown to them.

Appellees and appellant thereupon entered a written "exchange contract," under which appellant was to convey the new house to appellees (subject to appellees' assumption of encumbrances equaling $14,450.00) and appellees were to convey their old house to appellant (subject to his assumption of encumbrances equaling $5,750.00). Conflicting testimony was offered at the trial as to whether this contract represented the entire transaction between the parties: appellant contended that it did, appellees alleged it was, and necessarily had to be, but a part. Appellees testified that title to the old house was conveyed to appellant in reliance on the latter's representation that such a conveyance was necessary if he was to be able to act expeditiously as their agent in arranging a sale of the old house. They asserted that appellant had agreed to sell the old house, to deduct the agreed commission, and to apply the net proceeds of the sale to a reduction of the debt to appellant created in taking the new house. The jury's verdict is an implicit acceptance of appellees' version of the facts,[2] and we accept that finding.

By virtue of this transaction, appellees conveyed to appellant title to a house valued at between $13,000.00 and $15,000.00,[3] and in which they had had an

---

1. Appellees Mrs. Coates and her mother were the co-owners of this property. The third party appellee is the husband of Mrs. Coates.

2. At an earlier trial, the jury also found for plaintiffs-appellees, and awarded both compensatory and punitive damages. But finding the verdict excessive, the trial judge ordered a new trial. Fol-

lowing the second trial, the jury again returned a verdict for plaintiffs-appellees. It is from the judgment entered on the verdict in the second trial that this appeal is taken.

3. These are term, rather than cash prices. Appellant was later able to sell this house, on terms, for $14,950.00.

equity of approximately $9,000.00. At the same time appellees acquired legal title to a house valued at between $14,000.00 and $17,000.00 [4] but in which they had no equity at all. The "exchange contract" obligated them to pay $14,450.00 for the new house. However, relying on appellant's statements, they expected that once appellant had sold their old house, he would credit the net proceeds of their equity in that house, less his commission, towards the purchase price of the new one. This would seem to be a most reasonable expectation, as it may hardly be assumed that appellees would have merely surrendered their $9,000.00 equity in the old house, so as, in effect, to pay $23,450.00 for the new house concededly worth not more than $17,000.00.

However, when appellant did sell the old house, he refused to credit any part of the proceeds received against the balance owed by appellees for the new one. He stated that by the terms of the exchange contract he had obtained absolute title to the first house including all equities in the property.[5] As appellees viewed the contract they had at this point lost the equivalent of their equity in the first house, or about $9,000.00 less commission and expenses.

At the trial, considerable evidence was introduced by both parties on the issue of the damages suffered by appellees as a result of this transaction. Complex computations were required involving the discounting of various encumbrances on both properties concerned. The jury was adequately instructed on this point, and it calculated actual damages to be $7,059.00. The jury then proceeded to award appellees $7,500.00 as punitive damages under instructions which are challenged on this appeal.

Appellant appeals from the judgment entered on this verdict, urging that appellees were not misled into entering the "exchange contract," and that the contract should be enforced according to its terms. Further, he urges that even if he was at fault in not explaining the terms of the contract to appellees in greater detail, his actions were not such as to allow the imposition of punitive damages.

■ Appellant was a licensed real estate broker. He held himself out to the public as a person in whom the public could place trust and confidence in real estate transactions.[6] The evidence adduced at trial was adequate to support the finding implicit in this verdict that appellees engaged appellant, in his expert and publicly proclaimed capacity, for the purpose of effectuating this not uncomplicated sale and purchase of properties. When appellees hesitated at one point, appellant expressly assured them that he would "take care of" them, and in response to their suggestion before settlement that a lawyer be obtained, he volunteered that he was both a lawyer and a broker. In this situation appellees had a right to rely on the competence, honesty and good faith of appellant, assured that he would guard their interests; conversely, appellant must be considered to have owed appellees a high degree of fidelity—foremost being the obligation of fair dealing and full disclosure and the utmost protection of their interests in the transaction. Anything less on appellant's part would have violated the *well recognized fiduciary duty an agent owes to his principal.*[7]

---

4. Again these are term prices. Appellant had earlier paid $14,250.00 for this house, on terms one-third cash and two-thirds credit.

5. The contract obligated him to pay $5,750.00 on remaining deeds of trust on the property. The $9,000.00, previously paid on such deeds by appellees, he claimed as his own.

6. Persons licensed as real estate brokers in the District of Columbia must have satisfied the Real Estate Commission that they are "trustworthy and competent to transact the business of a real estate broker" and that they have "a general and fair understanding of the obligations between principal and agent." D.C.Code, § 45–1404 (1951 ed.)

7. Searl v. Earll, 1954, 95 U.S.App.D.C. 151, 221 F.2d 24; Holtzman v. Linton, 1906, 27 App.D.C. 241; Evans v. United

The record is clear that appellant did violate the fiduciary relationship which he invited appellees to enter. By calculated and deceitful practices he defrauded appellees of some $7,000.00. He exploited their trust flagrantly for his own gain; he could hardly have been *less* a fiduciary. The questions, therefore, that we must now consider are (1) does the record support the award of compensatory damages and (2) may punitive damages be allowed in these circumstances and on this record. Underlying this second point is the declared policy of the legislative branch that the real estate business in the District of Columbia be conducted by persons with "a good reputation for honesty, truthfulness, fair dealing, and competency." [8]

■ From what has been recited as to the facts it is plain that the evidence supports the jury finding of compensatory damages of approximately $7,000.00 and we so hold. As to the award of punitive damages we find no prior cases in this circuit expressly authorizing such damages for breach of a duty arising out of the relationship of principal and agent.

■ The relationship between principal and agent arises out of contract. Ordinarily, an agent who has violated °a duty he owes his principal, is considered to have breached his contract, entitling the principal to contract remedies of rescission or damages.[9] For breaches of contract standing alone, punitive damages are generally not recoverable.[10] Moreover, it is axiomatic that punitive damages are "not favored." Some courts have refused to allow the imposition of punitive damages in *any* contract actions, regardless of the types of contracts involved or the circumstances surrounding their breach.[11]

■ We join with those courts which decline to follow such mechanical classification. We believe the better view to be that in certain, narrowly defined circumstances, where a breach of contract merges with, and assumes the character of, a wilful tort, calculated rather than inadvertent, flagrant, and in disregard of obligations of trust punitive damages may be assessed.[12] In this view we are by no means alone. That punitive damages have a proper place in a civil case as a punishment of, and as a deterrent to, various forms of wrongful behavior has long been recognized by the federal courts including this court.[13] All but four states have in some form adopted a

States Fidelity & Guaranty Co., D.C. Mun.App.1956, 127 A.2d 842; Restatement, Agency § 13.

8. Real Estate and Business Brokers' License Act, § 5, 50 Stat. 789 (1937), D.C. Code, § 45–1405 (1951 ed.)

9. Searl v. Earll, supra; Earll v. Picken, 1940, 72 App.D.C. 91, 113 F.2d 150; Ballard v. Spruill, 1934, 64 App.D.C. 60, 74 F.2d 464; Wlodarek v. Thrift, 1940, 178 Md. 453, 13 A.2d 774; Wright v. Everett, 1956, 197 Va. 608, 90 S.E.2d 855; Restatement, Agency §§ 400, 407 (1).

10. Chesapeake & Potomac Telephone Co. v. Clay, 1952, 90 U.S.App.D.C. 206, 194 F.2d 888; Minick v. Associates Investment Co., 1940, 71 App.D.C. 367, 110 F.2d 267; 5 Corbin, Contracts § 1077 (1951); Restatement, Contracts § 342.

11. Fordson Coal Co. v. Kentucky River Coal Corp., 6 Cir., 1934, 69 F.2d 131; Young v. Main, 8 Cir., 1934, 72 F.2d 640; Steiner v. Rowley, 1950, 35 Cal.2d 713, 221 P.2d 9; Chelini v. Nieri, 1948, 32 Cal.2d 480, 196 P.2d 915; White v. Metropolitan Merchandise Mart, 1954, 9 Terry, Del., 526, 107 A.2d 892.

12. See 5 Corbin, Contracts 367 (1951); McCormick, Damages 290 (1935); Note, Exemplary Damages in the Law of Torts, 70 Harv.L.Rev. 517, 532 (1957); and see cases cited in notes 17 and 19, infra.

13. See, e. g., Woodward v. Ragland, 1895, 5 App.D.C. 220; Wardman-Justice Motors, Inc. v. Petrie, 1930, 59 App.D.C. 262, 39 F.2d 512, 69 A.L.R. 648; Mills v. Levine, 1956, 98 U.S.App.D.C. 137, 233 F.2d 16; Day v. Woodworth, 1851, 13 How. 363, 54 U.S. 363, 14 L.Ed. 181; Scott v. Donald, 1896, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632; Greene v. Keithley, 8 Cir., 1936, 86 F.2d 238; Scalise v. National Utility Service, Inc., 5 Cir., 1941, 120 F.2d 938; Reynolds v. Pegler, 2 Cir., 223 F.2d 429, certiorari denied, 1950, 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754.

similar rule.[14] The types of behavior that courts have considered sufficiently "wrongful" so as to warrant the assessment of punitive damages, have varied greatly. Usually the defendants' actions have been labeled "wilful," or "malicious" or "reckless" or "wanton" or "outrageous."

We need not adopt any single, particular formula in upholding an award of punitive damages against a faithless agent. On the contrary, we believe each case must be considered on its peculiar facts; but once it has been shown that one trained and experienced holds himself out to the public as worthy to be trusted for hire to perform services for others, and those so invited do place their trust and confidence, and that trust is intentionally and consciously disregarded, and exploited for unwarranted gain, community protection, as well as that of the victim, warrants the imposition of punitive damages. This is particularly true in areas of conduct where the acts committed, while reprehensible, may fall short of rendering the wrongdoer subject to criminal prosecutions.[15] When one is commissioned by, or holds himself out to, the community to perform special services which may be engaged for hire by others in the conduct of their personal or business affairs, such as lawyers, trust companies, realtors, or the like, such persons inescapably assume certain fiduciary responsibilities. The community in turn has a broad public interest, as a matter of public policy, in how such persons conduct their relations with those who place trust in them. Sometimes that public policy is expressed in terms of specific regulatory statutes with penal sanctions, sometimes by the courts and professional associations in disciplinary actions. In this case we express the broad public policy by the imposition of punitive damages. Punitive damages are particularly apt in such circumstances because they both punish the wrongdoer, and offer the wronged a greater incentive to bring derelicts to justice [16] a process which can subject the victim to considerable expense and trouble.

The facts of the case before us fall well within the narrow bounds in which we think punitive damages are properly imposed. Appellant held himself out to the public as an expert in real estate matters; he invited and solicited the trust of, among others, the appellees. He expressly dissuaded the latter from consulting a lawyer. And yet, instead of acting in the best interests of his principals, he executed a carefully planned and cleverly concealed method of betraying the trust appellees at his instance had placed in him. Real estate confidence games of this character must be discouraged. They have been the basis for recoveries of punitive damages elsewhere.[17] We need not decide whether appellant's conduct was such that it constituted the common law tort of fraud

14. Three states—Louisiana, Massachusetts and Washington—refuse to recognize punitive damages in the absence of an authorizing statute, see Note, Apportionment of Punitive Damages, 38 Va.L. Rev. 71, 72, (1952), and Connecticut considers such damages only as extra compensation for plaintiffs, sufficient for them to cover otherwise unobtainable attorney's fees. Tedesco v. Maryland Casualty Co., 1941, 127 Conn. 533, 18 A.2d 357, 132 A.L.R. 1259.

15. Nor is it a necessarily sufficient alternative that on facts such as those presented by the instant case, the administrative remedy of license revocation may be utilized to curb the wrongdoer's behavior. D.C.Code, § 45–1408 (1951 ed.).

16. This rationale would also seem to underlie the various statutory authorizations for the collection of treble damages in private civil suits brought against persons who, e. g., violate the antitrust laws, Clayton Act, § 4, 15 U.S.C.A. § 15; import articles at dumping prices, 15 U.S.C.A. § 72; infringe patents, 35 U.S.C. § 284; or demand or accept rent in excess of statutory ceilings, 50 U.S. C.A.Appendix, § 1895(a), (b).

17. E. g., Bell v. Gailey, 1951, 37 Tenn. App. 17, 260 S.W.2d 300; Kress v. Soules, Tex.Civ.App.1953, 255 S.W.2d 244; Briggs v. Rodriguez, Tex.Civ.App. 1951, 236 S.W.2d 510.

and deceit, for the commission of which, independent of fiduciary relationship, appellant may have been held liable for punitive damages.[18] We find a sufficient wrong for that purpose in the total conduct in which appellant engaged.[19]

The court charged that if the jury found for the appellees, it could award, in addition to compensatory damages, punitive damages "as a punishment for a wrong wilfully and maliciously done." In addition to advising it of the elements of malicious or wanton disregard of appellees' rights as a basis for punitive damages, the court told the jury:

> "If you find from the evidence in this case that the defendant, Sidney J. Brown, was retained by the plaintiffs to act as their agent, either in selling their house or procuring a house for them to purchase, then as a matter of law, you are instructed that Sidney J. Brown owed the plaintiffs the highest fidelity and was bound to inform them fully of every important development affecting their interests and particularly not secretly or otherwise to take any step in which he would reap a profit personally at their expense."

This charge was correct.

The court also instructed the jury that if it found for appellees it must "al-low to the defendant [a] commission amounting to 5 per cent." On this record it would have been more appropriate for the court to instruct the jury that if it found Brown to be faithless to the trust reposed in him as agent, it could *disallow* his commission entirely.[20] Since the jury's verdict makes it obvious that it found appellant to be an agent and that as such he was faithless to his duty, the instruction with respect to the commission was more favorable to him than he was entitled to receive. However, this $747.00 "windfall" credit, allowed by the jury to appellant under the instruction, may be considered as a counterweight, offsetting the $700.50 by which appellant claims the jury *overvalued* appellees' compensatory damages. Even if we accept appellant's version as to the item of $700.50 we need not reverse or even modify the judgment below for the purpose of correcting a variation which is insubstantial if it exists at all.

We have separately considered whether the amount of the punitive damages should be altered. Considering the whole record including the fact that the victims of appellant's fraud have been put through two separate trials to vindicate their rights and giving careful consideration to the public policy aspects of the case we are not disposed to disturb the verdict.

Accordingly, the judgment is

Affirmed.

18. See District Motor Co. v. Rodill, D.C. Mun.App.1952, 88 A.2d 489; 1 Sedgwick, Damages § 367 (9th ed., 1920).

19. Cf. Greene v. Keithley, 8 Cir.1936, 86 F.2d 238; Davis & Clanton v. C.I.T. Corp., 1939, 190 S.C. 151, 2 S.E.2d 382; Holland v. Spartanburg Herald-Journal Co., 1932, 166 S.C. 454, 165 S.E. 203, 84 A.L.R. 1336; Smith v. Jordan, Tex. Civ.App.1949, 220 S.W.2d 481; 5 Corbin, Contracts 367 (1951).

20. Wadsworth v. Adams, 1890, 138 U.S. 380, 11 S.Ct. 303, 34 L.Ed. 984; Evans v. United States Fidelity and Guaranty Co., D.C.Mun.App.1956, 127 A.2d 842; Haymes v. Rogers, 1950, 70 Ariz. 408, 222 P.2d 789, 17 A.L.R.2d 896; Restatement, Agency § 469.