Virginia SERE, et al., Appellants,

v.

GROUP HOSPITALIZATION, INC., et al., Appellees.

GROUP HOSPITALIZATION, INC., et al., Appellants,

v.

Virginia SERE, et al., Appellees.

Nos. 79–720, 79–738.

District of Columbia Court of Appeals.

Argued Dec. 2, 1980.

Decided March 18, 1982.

James E. Joyner, Washington, D. C., for Virginia Sere et al.

Charles J. Steele, Washington, D. C., with whom James Edward Ablard and Michaela Mudre Twomey, Washington, D. C., were on the briefs, for Group Hospitalization, Inc.

Before HARRIS * and MACK, Associate

* *Associate Judge* Harris concurred in this opinion prior to his retirement from the court on

February 5, 1982.

Judges, and GALLAGHER,** Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

On May 6, 1977, Joseph and Virginia Sere filed suit in the Superior Court against the Blue Cross and Blue Shield Associations and their respective member plans, Group Hospitalization, Inc. (GHI) and Medical Service of the District of Columbia (MSDC). Mr. Sere, an employee of the Department of Labor, had been covered under the defendants' medical plan for federal employees. The complaint alleged that the defendants had breached the contract of insurance by wrongfully refusing claims totaling $1,399.85; and that this breach and certain of its foreseeable consequences were malicious and so outrageous as to amount to a tort, for which an additional $250,000 in tort damages and $500,000 in punitive damages were prayed. By way of response, defendants filed two motions to dismiss, which were denied, and then an answer. After presentation of the evidence at trial, the court granted the defendants' motion for a directed verdict on the tort and punitive damages issues. The jury returned a verdict for the plaintiffs in the amount of $1,399.85, the full amount of the denied insurance claims. From the judgment on that verdict, both parties appealed, the plaintiffs attacking the court's refusal to let the tort and punitive damages questions go to the jury and the defendants, on the other hand, urging that the statute of limitations had run on the denied insurance claims. We affirm the trial court's granting of a directed verdict on the tort and punitive damages issues, and remand for further proceedings on the statute of limitations question.

** Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. "Basic benefits" under the plan cover hospital services, surgery, in-hospital care, and certain other physician services without being subject to a deductible or a total lifetime dollar limit. "Supplemental benefits," on the other hand, are subject to a deductible and to dollar maximums, as well as to coinsurance. They

I

Joseph Sere began employment with the Department of Labor in 1965, and exercised his option to obtain health insurance for himself and his family through the government's Blue Cross/Blue Shield plan (hereinafter the Federal Employee Program or the plan). Virginia Sere, appellant's wife since 1965, has had a long history of ill-health. Sometime in 1970, she began experiencing severe stomach pains, general weakness, and kidney and urinary tract problems. Over the next six years, Mrs. Sere tried, without apparent success, to secure diagnosis and treatment of her maladies. These efforts involved over a dozen separate admissions to hospitals in various parts of the country and numerous outpatient visits, with the attendant physician, laboratory, x-ray and other costs. GHI paid in excess of $20,000 worth of "basic benefits"[1] for Mrs. Sere during this period, while denying claims totalling $974.85 in connection with two periods of hospitalization in February and May, 1972. MSDC paid over $12,500 in "supplemental benefit" claims, see note 1 supra, while denying a total of $425 in claims, of which $135 was for services incidental to the second 1972 hospitalization.

The 1972 Blue Cross/Blue Shield Federal Employee Program provided that basic benefits would not be provided for

Hospital services (except x-ray and laboratory services) and in-hospital medical care when the hospital admission is primarily for diagnostic x-rays, laboratory and clinical tests, when the procedures could have been performed on an out-patient basis without prejudicing the patient's physical condition or adversely af-

apply to services rendered in the home, doctor's office, hospital, or elsewhere; to certain charges in excess of basic benefits; and to certain services and supplies not covered by basic benefits. See Government-Wide Service Benefit Plan 1972 at 3 (Plaintiff's Exhibit No. 5) [hereinafter cited as 1972 Plan]. Basic benefits are paid under Blue Cross, here administered by GHI; supplemental benefits are paid under Blue Shield, here administered by MSDC. Brief of Appellees and Cross-Appellants at 4.

fecting the quality of medical care rendered. [Government-Wide Service Benefit Plan 1972, at 13 (Plaintiff's Exhibit No. 5), hereinafter cited as 1972 Plan.] The plan further provided that neither basic nor supplemental benefits would be provided for "[s]ervices and supplies ... [n]ot medically necessary for the diagnosis or treatment of illness, injury, or bodily malfunction...." *Id.* at 12.

The first hospitalization of Mrs. Sere for which GHI denied basic coverage was a February 29, 1972, admission to Henrotin Hospital in Chicago, Illinois. The claim for $608.45 in hospital charges was denied on June 9, 1972, on the ground that the primary purpose of the hospital stay was for diagnosis, and that all of the diagnostic procedures undergone by Mrs. Sere could have been (and routinely are) performed on an outpatient basis or in a doctor's office. The $75 charge of the attending physician was paid by MSDC, however, since these services themselves were not covered by any of the plan exclusions. The decision to deny basic coverage for the hospitalization was made only after the relevant records were reviewed by a GHI "medical advisor." On August 29, 1972, Mr. Sere was informed that while basic coverage was not available for the hospital charges, he could apply for supplemental benefits to cover 80 percent of the hospital bill. Mr. Sere refused to submit such a claim, however, because (in his words), "For me to fill out that supplemental claim form would be the same as saying, 'My wife could have been treated on an out-patient basis at Henrotin ... without seriously prejudicing her condition.'"

The second hospitalization for which benefits were denied occurred between May 3 and May 16, 1972, at Circuit Terrace Hospital in Alexandria, Virginia. GHI provided basic coverage for the period of May 3–May 10, but denied $366.40 in coverage for the final five days of the stay, once again on the ground that records indicated that hospitalization was not required for the diagnostic tests which were performed during that period. Certain doctors' bills totalling $135 also were denied. Mr. Sere again was

notified that all claims denied were eligible for 80 per cent coverage, but he again refused to apply for supplemental coverage.

Mr. Sere appealed the denial of both the Henrotin and Circuit Terrace claims to the Civil Service Commission (now the Office of Personnel Management). In a letter dated March 9, 1973, the Chairman of the Commission related that upon review at the Commission's request, the Director of the Blue Cross/Blue Shield Federal Employee Program had affirmed the denial of these claims, and that the Commission's Medical Director concurred with that affirmance. The letter stated that hospital records showed that all of the extensive diagnostic tests which Mrs. Sere received during the two periods in question could have been administered on an out-patient basis, and that nothing in the records showed a need for the hospitalization. Mrs. Sere was ambulatory and on a regular diet, and received no treatments other than a routine oral antibiotic at Henrotin and a sleeping aid and tranquilizer at Circle Terrace. The Commission concluded that these periods of hospitalization were within the ambit of the exclusion for "[h]ospital services ... when the ... admission is primarily for diagnostic ... tests, when the procedures could have been performed on an outpatient basis ...."

In addition to the claims connected with the Henrotin and Circle Terrace hospitalizations, MSDC denied miscellaneous claims totaling $290. A $56 charge for certain physician services rendered during a hospitalization in the summer of 1977 at the McLeod Infirmary in Columbia, South Carolina, was denied on June 28, 1973, on the ground that this physician care was concurrent with other physicians' services and not medically necessary. A supplemental benefits claim of $156 for in-home nursing care administered to Mrs. Sere between March 18 and May 23, 1974, was filed on December 26, 1975, and denied on November 11, 1976, after requested additional information failed to establish that the services were medically necessary. An unitemized bill for physician services rendered in July 1973 did

not reach MSDC until September 1975; it went unpaid when Mr. Sere failed to resubmit it in itemized form. Finally, a $15 claim for physician services rendered on March 7, 1974, was incomplete, and Mr. Sere again failed to provide MSDC with the necessary information.

## II

Because GHI and MSDC do not appeal the jury's finding that all of the above claims were covered by the plan and should have been paid, we venture no opinion on that particular question. We hold, however, that the Seres' claim that these benefit denials justified an award of punitive damages or amounted to the tort of intentional infliction of severe emotional distress is baseless.

■ It is well-recognized that punitive damages are not favored in the law. *Price v. Griffin*, D.C.App., 359 A.2d 582, 589 (1976); *Brown v. Coates*, 102 U.S.App.D.C. 300, 303, 253 F.2d 36, 39 (1968). The most appropriate field for their application is the realm of tort actions generally, C. McCormick, Handbook on the Law of Damages § 81, at 286 (1935); J. Stein, Damages and Recovery: Personal Injury and Death Actions § 185, at 366 (1972); but even there, they are available only in cases which present circumstances of extreme aggravation. *Minick v. Associates Investment Co.*, 71 App.D.C. 367, 368, 110 F.2d 267, 268 (1940); *see Price v. Griffin, supra* at 589. The defendant's tortious conduct must have been outrageous, characterized by malice, wantonness, gross fraud, recklessness, or willful disregard of the plaintiff's rights. *Riggs National Bank v. Price*, D.C.App., 359 A.2d 25, 28 (1976). *See also Spar v. Obwoya*, D.C.App., 369 A.2d 173, 180 (1977); *Harris v. Wagshal*, D.C.App., 343 A.2d 283, 288 (1975); *Franklin Investment Co. v. Homburg*, D.C.App., 252 A.2d 95, 98 (1969); *Washington Garage Co. v. Klare*, D.C.App., 248 A.2d 681, 684 (1968).

■ Where the basis of a complaint is, as here, a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious. *Den v. Den*, D.C.App., 222 A.2d 647, 648 (1966); *Minick v. Associates Investment Co., supra* at 368, 110 F.2d at 268. *See also McIntosh v. Aetna Life Insurance Co.*, D.C. App., 268 A.2d 518, 521 (1970). The rule in this jurisdiction is that only where the alleged breach of contract "merges with, and assumes the character of, a willful tort" will punitive damages be available. *Brown v. Coates, supra* at 303, 253 F.2d at 39. *See McIntosh v. Aetna Life Insurance Co., supra* at 521; *Den v. Den, supra* at 648. More precisely, the breach must merge with and assume the character of a willful tort. *Den, supra* at 648.

■ The Seres' complaint alleged, in substance, that defendants' denials of the insurance claims in question were breaches of contract which "merge[d] with, and assume[d] the character of" the tort of intentional infliction of severe emotional distress. This tort consists of (1) "extreme and outrageous" conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff "severe emotional distress." Restatement (Second) of Torts § 46 (1965). *See Waldon v. Covington*, D.C.App., 415 A.2d 1070, 1076 (1980). As regards the first element, the Restatement makes clear that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement, *supra*, § 46, commented at 73. It may be possible to infer the existence of the second element of the tort—intent or recklessness—from the very outrageousness of a defendant's conduct. *Waldon v. Covington, supra* at 1077. Finally, the defendants' actions must proximately cause the plaintiff emotional upset "of so acute a nature that harmful physical consequences might be not unlikely to result." *Clark v. Associated Retail Credit Men*, 70 App.D.C. 183, 186, 105 F.2d 62, 65 (1939). Such a tort, if proved, would provide an appropriate basis for an award of punitive damages, since it is by definition willful and outrageous conduct which society finds intolera-

ble, and seeks to deter. *See Harris v. Wagshal, supra* at 288 & n.13.

◼ Viewing the evidence most favorably to the Seres and giving them the benefit of every rational inference therefrom, *see Gaither v. District of Columbia*, D.C. App., 333 A.2d 57, 59 (1975); *see also Galloway v. United States*, 319 U.S. 372, 395–96, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1943), we conclude that the conduct of GHI and MSDC was not tortious at all, much less "extreme and outrageous" conduct intended to cause severe emotional distress. *Cf.* Restatement, *supra*, § 46, comment h, at 77 ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."). The evidence showed that GHI and MSDC paid a combined total of over $32,500 in connection with Mrs. Sere's illnesses, while denying only $1,399.85 in benefits. Moreover, GHI repeatedly urged the Seres to file for 80 per cent supplemental coverage for these denied claims, but Mr. Sere refused to do so. In the case of each denial, the Seres were told precisely why the services were not covered and these stated grounds were, at the very least, quite arguably within the term of the health plan. The Civil Service Commission upheld each benefit denial after thorough evaluation of the relevant records. Where more information was needed to process a claim, the Seres were asked for it, but several times failed to respond. On such a record, we hold that it was proper for the trial judge to prevent the tort and related punitive damages issue from going to the jury.[2]

◼ Appellants have attempted, both below and on appeal, to make much of a June 23, 1971, letter from Joseph E. Harvey, Vice President of the Federal Employee Program, to Victor M. Brian, President of MSDC. Appellants claim that this letter effected a unilateral change in the terms of the insurance contract and was a malicious attempt by Blue Shield to cut back on growing expenditures by having its member plans deny promised benefits. We cannot agree with this interpretation of the letter. A reasonable reading of it leads only to the conclusion that, faced with "a dramatic and unexpected increase in utilization," member plans were directed to ensure that they paid only for benefits covered under the contract. In particular, Harvey instructed MSDC to refrain in the future from paying supplemental benefits for hospital costs connected with diagnostic admissions disallowed under basic coverage (because they could have been performed on an outpatient basis) for the reason that hospitalization in such cases was not medically necessary—an express exclusion for *all* benefits under the plan. While the letter described this as a "policy change," it is clear that what was meant was that it was a change from Blue Shield member plans' past *practice* of providing 80 per cent coverage for services excluded by the plain terms of the policy. But even were we to find something objectionable with this "policy change," the evidence showed that it was not implemented with respect to the Seres. The Seres never attempted to apply for supplemental coverage, despite GHI's recommendation that they do so. Accordingly, the jury could not reasonably have considered the Harvey letter as evidence of tortious conduct toward the Seres.

### III

Defendants GHI and MSDC assign error to the denial by several trial court judges of their motions to dismiss. The stated

---

**2.** To be sure, the trial judge granted defendants' motion on the somewhat different grounds (1) that an award of punitive damages required proof of actual malice, and plaintiffs failed to meet that burden; and (2) that there was no proof that the defendants' conduct proximately caused the plaintiffs' alleged severe emotional distress. We are free to sustain the action below on grounds not advanced there. *Max Holtzman, Inc. v. K & T Co., Inc.*, D.C.App., 375 A.2d 510, 513 n.6 (1977); *Silverstone v. District of Columbia Board of Zoning Adjustment*, D.C.App., 372 A.2d 1286, 1287–88 (1977), *vacated in part and amended*, 396 A.2d 992 (1979); *Laughlin v. Eicher*, 79 U.S.App. D.C. 266, 269, 145 F.2d 700, 703 (1944), *cert. denied*, 325 U.S. 866, 65 S.Ct. 1403, 89 L.Ed. 1985 (1945).

grounds for the motions were, *inter alia*, that suit upon the Henrotin, Circuit Terrace, and McLeod claims was barred under the three-year statute of limitations for contract actions, D.C.Code 1973, § 12–301(7), and that, assuming the concurrent dismissal of the tort and punitive damages claims, the aggregate amount of the remaining benefit claims gave the Small Claims and Conciliation Branch exclusive jurisdiction over the suit. *See* D.C.Code 1973, § 11–1321. Because we conclude from our review of the record that none of the trial judges passed upon the actual merits of this argument, we remand for appropriate further proceedings.

The defendants' motions to dismiss—one by GHI and MSDC and one by Blue Cross/Blue Shield—initially were filed on June 2, 1977, by way of response to the complaint. Blue Cross/Blue Shield's motion apparently was rejected and returned to them by the Clerk's Office because of some formal defect; the motion by GHI and MSDC, though nearly identical to the rejected motion, appears to have remained in the case packet. An opposition to "defendant's motion" (in the singular) was submitted on June 20, 1977. It appears that argument was heard on the motion or motions on August 1. The motions judge's summary order, filed that day in open court, denied "defendant's motion" (again in the singular) without stated reason; but a motion to reconsider or in the alternative for summary judgment filed by the defendants ten days later recites that the court had denied the motion because their statute of limitations claims were not supported by an appropriate affidavit. While the motion to reconsider included the required affidavit, it lacked a supporting memorandum of points and authorities, and was opposed by the plaintiffs for that reason and returned

to the defendants on August 23, 1977. On September 2, 1977, the motion to reconsider was resubmitted with the required memorandum, but the court denied it without opinion on September 23.

Further complicating this unusual set of circumstances is the fact that on August 19, 1977—after the defendants had filed their motion to reconsider, but before the plaintiffs had filed their opposition and before the court's second order—another judge issued an order purporting to deny the motion of Blue Cross/Blue Shield to dismiss on the grounds that it was made on substantially the same grounds as that of GHI and MSDC, which motion had been previously denied on August 1. Therefore the second motions judge appears to have made the questionable assumption that the prior order of August 1 was restricted to the defendants GHI and MSDC, and on the apparently incorrect assumption that that order was on the merits and therefore the law of the case. The order of September 12, 1977, does little to remedy the ambiguity.

At trial before yet a third judge, the defendants attempted to introduce evidence relating in part to the limitation question over the plaintiffs' objection that it was an "already decided issue." The court admitted the evidence with the understanding that the jury would not be permitted to decide the issue, while stating that "I didn't say I was going to do it [either]." Later, after the court had ruled that only the contract claim would go to the jury, counsel for the defendants again reminded the court of the limitation question. The court seems to have indicated a preference for considering that question only after the jury instructions had been selected,[3] but the record reveals no subsequent mention of the issue.

---

3. The exchange was as follows:

> MR. ABLARD [counsel for the defendants]: Your Honor, on the contract claim, we believe that there are certain legal defenses; statute of limitations—
>
> THE COURT: Well, let's not get into that because that is a matter of law; and I only wanted to talk about things that are going to this jury this morning.

> MR. ABLARD: That's right, Your Honor; I wanted to maintain my position—
>
> THE COURT: All right; you are maintaining your position, whatever it is, on the statute of limitations.
>
> MR. ABLARD: Thank you, Your Honor.

■ We conclude that the defendants' continuing argument that suit upon the Henrotin, Circle Terrance, and McLeod benefit denials was time-barred should have been considered on the merits. Because it appears that the issue was not so considered in the trial court, we remand for appropriate further proceedings.

*So ordered.*