**Arthur M. WAGMAN, Appellant,**

v.

**Debra F.J. LEE, Appellee.**

No. 81–768.

District of Columbia Court of Appeals.

Submitted Dec. 1, 1982.

Decided Feb. 23, 1983.

Alan B. Moldawer, Springfield, Mass., was on the brief for appellant.

John W. Karr, Washington, D.C., was on the brief for appellee.

Before KELLY and TERRY, Associate Judges, and GALLAGHER, Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

A jury awarded appellee $4,000 compensatory and $15,000 punitive damages for appellant's breach of fiduciary duty. Appellant argues that as escrow agent his legal relationship with depositor appellee is contractual, not fiduciary; alternatively, he contends that his conduct was insufficiently egregious to justify imposition of punitive damages. We affirm.[1]

In late 1974, appellant, an attorney, suggested to appellee and her roommate, David Brooks, the possibility of purchasing a home. Appellant had provided legal services to Brooks in the past and was owner manager of the building in which Brooks and appellee together rented an apartment. Appellant indicated various tax advantages of home ownership and added that one of his clients, Ora Lee Shipp, owned a house at 1225 Decatur Street, N.W., which she desired to sell. Appellant had represented Shipp for many years and explained that her current financial position made likely a sale at a "distressed" price. Brooks and appellee expressed interest.

Appellant evicted tenants living in the house and prepared a contract of sale. The contract established a selling price of $36,-000 and permitted the purchaser to assume two outstanding notes secured by first and second deeds of trust. The agreement fur-

1. Appellant's objections to jurisdiction, service of process and failure to join an indispensable party are without merit.

ther required the purchaser to pay $3,000 cash at the time of conveyance and $1,000 within thirty days and provided for full settlement at appellant's office 20 days later. Appellee had drawn a cashier's check for $3,000 to appellant's order, and on March 19, 1975, met with appellant and Brooks. At appellant's office, appellee examined the contract and noticed the absence of her name. She withheld delivery of the $3,000 until appellant wrote on the bottom of the form, "to be conveyed in the name of David A. Brooks and Debra F.J. Lee." Appellant accepted, endorsed and deposited the check into his escrow account in Maryland National Bank. Thereafter, appellee and Brooks moved into the house, and for the following year and a half, undertook substantial renovations.

Settlement of the contract did not occur within thirty days. Responding to appellee's inquiries as to the reason for delay, appellant stated that payment of the additional $1,000 required by the contract was a condition of settlement. Appellee gave to Brooks $1,000 to bring to appellant, which he did on August 13, 1976. Appellant later confirmed receipt in a telephone conversation with appellee. Still, however, there was no settlement, for at this point, a series of three subsequent contracts complicated the situation.

On the day Brooks conveyed the additional $1,000 to appellant, appellant presented to him a second real estate contract which purported to sell the house solely to Brooks without knowledge of appellee. Signed by Shipp, the agreement provided a selling price of $49,500 and required a down payment of $12,500. This contract was never executed, nor did appellee learn of its existence until trial.

Two weeks later, appellant summoned Brooks and appellee to his office, and on September 1, 1976, provided to them another proposed contract. This agreement retained Brooks and appellee as purchasers but increased the original selling price from $36,000 to $49,500 and the down payment from $4,000 to $9,500. The contract also required financing at current interest rates. Appellee questioned these changes, but appellant said they were necessary because the realty company would no longer permit assumption of the outstanding notes due to recent default in payments, through no fault of appellee. Appellee signed the contract but later refused to complete the residential loan application necessary to obtain additional financing. At trial she testified, "I didn't want any part to do with getting myself into ... deeper waters financially, and I also questioned about the rightness of this contract." [2]

In early 1977, a fourth contract, orally executed, finally sold the house, but not to appellee. After she refused to procure a loan, Brooks, following appellant's advice, obtained another co-purchaser, Donald Thigpen. Brooks and Thigpen, without appellee, settled the contract on February 28, 1977. They used appellee's $4,000 as part of the down payment, without which, according to appellant, "there was not enough money to go through with the transaction."

Appellee sued appellant for breach of fiduciary duty.[3] Appellant testified that he had acted as escrow agent for buyer and seller, and received $3,000 on March 19, 1975, and $1,000 in August 1976. He stated that neither an "official" nor "unofficial" forfeiture of these funds occurred; rather, the $4,000 "was applied and given credit to Mr. Brooks in the 1977 sale." At the close of evidence, the trial court ruled that appel-

2. Appellee explained her concerns as follows: "Well, my understanding from Mr. Wagman [appellant] was that the sales price was still going to remain $36,000, and that this second contract wasn't really a contract, it was just a piece of paper that was going to [be] submitted to the bank. And that also worried me ... [b]ecause it was—it was just not as truthful as it could be."

3. Appellee dropped one count for specific performance of the contract before trial; the trial court directed a verdict for appellant on two other counts of breach of contract to purchase and interference with appellee's contractual relationship with Brooks.

lant had breached his fiduciary duty as escrow agent in misapplying the $4,000, but left the jury to determine the specific amount of this sum that appellee had given to appellant. The court also instructed the jury that it could award punitive damages.[4]

■ Appellant argues first that the contractual relationship between escrow agent and depositor does not permit an award of punitive damages as a remedy for breach. We disagree. Appellee's claim sounded not in contract but in tort based upon the special relationship between escrow agent and depositor. Although punitive damages generally are not recoverable for breach of contract, *e.g.*, *Brown v. Coates*, 102 U.S. App.D.C. 300, 303, 253 F.2d 36, 39 (1958); 5A CORBIN, CONTRACTS § 1077 (1964); Sullivan, *Punitive Damages in the Law of Contract: The Reality and the Illusion of Legal Change*, 61 MINN.L.REV. 207 (1977) [hereinafter cited as *Sullivan*], this rule is inapplicable if there exists an independent fiduciary relationship between the parties. *Brown v. Coates, supra*, 102 U.S.App.D.C. at 304–05, 253 F.2d at 40–41 (real estate broker has fiduciary relationship independent of agent/principal contract); *PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 417 F.2d 659, 663 (9th Cir.1969) (punitive damages may be awarded for breach of fiduciary duty independent of breach of contract cause of action), *cert. denied*, 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 924 (1970); *Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 65 N.J. 474, 504, 323 A.2d 495, 511 (1974) (insurer's wrongful failure to settle breaches both contractual and fiduciary obligations); CALAMARI & PERILLO, CONTRACTS § 14–3 (1976) (punitive damages awarded where breach of contract also involves violation of fiduciary duty); *Sullivan, supra* at 226 (breach of duty created by fiduciary relationship rather than contract permits recovery of punitive damages). The question is whether an escrow/depositor relationship, regardless of contractual underpinnings, fits within this special fiduciary category. We hold that it does.

■ An escrow agent occupies a unique position in the "triangular" relationship between purchaser and seller:

> [T]he escrow holder is the dual agent of both parties until the performance of the conditions of the escrow agreement, whereupon he becomes the agent of each of the parties to the transaction in respect to those things placed in escrow to which each party has thus become entitled. Thus, when the conditions specified in the escrow agreement have been fully performed, the title to the premises passes to the purchaser and title to the purchase money passes to the seller. Thereupon, the escrow holder becomes the agent of the purchaser as to the deed and of the seller as to the money.

*Ferguson v. Caspar*, 359 A.2d 17, 20, 22 (D.C.1976) (footnote omitted). Absent forfeiture or settlement, an escrow agent has no right to surrender the deposit. *See Cohn, Inc. v. Trawick*, 60 A.2d 926, 927

---

4. The court stated:

> In addition to damages compensating Ms. Lee for defendant's breach of fiduciary duty as escrow agent, you may but are not required to allow plaintiff punitive damages if you find that the act of defendant of disbursing the $4,000 deposit or part thereof in breach of his fiduciary duty as an escrow agent was willful, wanton or in reckless disregard of plaintiff's rights. Punitive damages are awarded to punish willful and outrageous conduct and thus to deter others from the commission of like acts. An act is wanton and reckless when it is done in such a manner and under such circumstances as to show intentional wrongdoing and a conscious disregard of the result upon the rights of others that may flow from the doing of the act. However, punitive damages may not be awarded for negligence, even gross negligence. Punitive damages may not be awarded where an act though willful in itself is committed in the honest assertion of a supposed right or discharge of duty, or without any evil or bad intention.
>
> \* \* \* \* \* \*
>
> If you find that defendant breached his fiduciary duty but that his conduct lacked any elements of intentional wrongdoing or conscious disregard of plaintiff's rights, you may not award punitive damages.

(D.C.1948). Recognizing these significant obligations, courts and commentators have described the escrow depositor relationship as fiduciary: "Certainly there can be no question as to the existence of the fiduciary capacity in a case where the agent has been entrusted with money to be used for a specific purpose." *Hamby v. St. Paul Mercury Indemnity Co.,* 217 F.2d 78, 80 (4th Cir.1954). *See Red Lobster Inns v. Lawyers Title Ins. Corp.,* 492 F.Supp. 933, 941 (E.D. Ark.1980) ("Where a person acts as escrow agent for parties to a land sale, he becomes agent of both buyer and seller and this agency creates a fiduciary relationship"), *rev'd in part on other grounds,* 656 F.2d 381 (8th Cir.1981); *National Bank of Washington v. Equity Investors,* 81 Wash.2d 886, 910, 506 P.2d 20, 35 (1973) (en banc) (escrow agent occupies fiduciary relationship to all parties to the escrow); *Brean v. North Campbell Professional Building,* 26 Ariz. App. 381, 384, 548 P.2d 1193, 1196 (1976) (escrow agent has fiduciary relationship of trust and confidence with parties to escrow and must conduct transaction with scrupulous honesty, skill and diligence); *cf.* Comment, *The Improper Use of Tax and Insurance Escrow Payments by Mortgagees,* 25 CATH.U.L.REV. 102, 118 (1975) ("the special deposit for a specific purpose has both debt and trust character").

■ Appellee gave to appellant $4,000 to purchase a home for her, entrusting to him money to be used for a specific purpose. *Hamby v. St. Paul Mercury Indemnity Co., supra,* 217 F.2d at 78. Notwithstanding any contractual obligations,[5] appellant, as escrow agent, owed to appellee the duties of a fiduciary. Moreover, the trial court's finding of breach of fiduciary duty is also plainly correct. Although appellee signed the contract of sale, settlement did not oc-

cur, nor did forfeiture. Appellant had no right to apply appellee's deposit to the 1977 purchase for the benefit of Brooks and Thigpen. *See Cohn, Inc. v. Trawick, supra,* 60 A.2d at 926.

■ Appellant secondly contends that his conduct did not warrant a jury finding of punitive damages. Punitive damages may be awarded "where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986, 992 (D.C.1980), *quoting Franklin Investment Co. v. Homburg,* 252 A.2d 95, 98 (D.C.1969). *See Bay General Industries, Inc. v. Johnson,* 418 A.2d 1050, 1058 (D.C.1980). The trial court carefully instructed the jury as to this standard. *See supra,* n. 4. On this record, a jury could properly find that appellant, an attorney, willfully disregarded appellee's rights in using her $4,000 deposit to obtain for another person a house in which she had lived and had substantially improved in expectation of ownership. The Circuit Court of Appeals' admonition to a real estate broker applies equally to an escrow agent, and *a fortiori* to an attorney:

[O]nce it has been shown that one trained and experienced holds himself out to the public as worthy to be trusted for hire to perform services for others, and those so invited do place their trust and confidence, and that trust is intentionally and consciously disregarded ... community protection, as well as that of the victim, warrants the imposition of punitive damages.

*Brown v. Coates, supra,* 102 U.S.App.D.C. at 304, 253 F.2d at 40.

*Affirmed.*

---

**5.** Even if a contract did exist between appellee and appellant, *see supra,* n. 3, our conclusion would not differ. As the Circuit Court of Appeals said in *Brown v. Coates, supra,* 102 U.S. App.D.C. at 303, 253 F.2d at 39:

We believe the better view to be that in certain, narrowly defined circumstances, where a breach of contract merges with, and assumes the character of, a willful tort, cal-

culated rather than inadvertent, flagrant, and in disregard of obligations of trust punitive damages may be assessed. In this view we are by no means alone. That punitive damages have a proper place in a civil case as a punishment of, and as a deterrent to, various forms of wrongful behavior has long been recognized by the federal courts including this court. [Footnotes omitted].