Farid SROUR, Plaintiff,

v.

F. Gordon BARNES, Defendant.

Civ. A. No. 86–2698.

United States District Court, District of Columbia.

Feb. 26, 1987.

Jack Wuerker, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, District Judge.

## I. BACKGROUND

On March 9, 1986, plaintiff, Farid Srour, agreed to sell and defendant, F. Gordon Barnes, agreed to buy a parcel of real property located in the District of Columbia. The price agreed upon by the parties for the lot and for the single family dwelling which plaintiff Srour was to build upon it was $395,000. The parties memorialized their understanding by signing a standard form contract for the sale of land. They altered the otherwise routine nature of the transaction by making the purchaser's duty to buy contingent upon the seller's duty to accept the purchaser's existing home in trade. In standard form, the contract also required the purchaser to pay the seller a deposit of $10,000. Barnes accordingly tendered Srour a check drawn in this amount. However, on or about March 22, 1986, the check was returned to Srour marked "insufficient funds." The plaintiff alleges that this action was intentional. The defendant claims the event was a mistake which occurred as a consequence of his financial manager's movement of certain funds without his knowledge. For reasons disputed by the parties, no deposit has ever been paid to the plaintiff and no settlement ever took place.

The issue before the Court is a narrow one. Because the defendant never purchased the bargained for the real estate, the plaintiff claims that the defendant breached the sales agreement. Under the terms of the contract, plaintiff elects the liquidated remedy of forfeiture of Barnes' yet unpaid $10,000 deposit. This is the substance of Count I of the plaintiff's complaint. Count II requests the Court to award punitive damages in the amount of $100,000. The plaintiff claims that punitive damages are appropriate in this contract action because the defendant's alleged breach of contract constitutes a willful tort.

A. Raymond Randolf, Washington, D.C., for plaintiff.

## II. DISCUSSION[1]

### A. *Jurisdiction*

The plaintiff's complaint grounds jurisdiction on the diversity statute, which states, in relevant part,

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy *exceeds* the sum or value of $10,000, *exclusive of interest and costs,* and is between—(1) citizens of different States....

28 U.S.C. § 1332 (emphasis supplied). Thus, to satisfy diversity jurisdiction, the plaintiff must demonstrate geographic diversity of the parties and must plead damages satisfying the amount in controversy requirement. Geographic diversity is uncontested. However, the defendant contests the plaintiff's allegation that more than $10,000 is at stake in this lawsuit. On its face, the plaintiff's complaint appears to satisfy the amount in controversy mandated by section 1332. Plaintiff's Count I seeks liquidated damages in the amount of exactly $10,000. Count II seeks punitive damages in the amount of $100,000. In addition, the plaintiff requests interest due, the costs of bringing this lawsuit, and attorney fees.

The defendant contends that assuming, *arguendo,* the $10,000 in liquidated damages is recoverable, this amount, in and of itself, does not confer jurisdiction on the Court. Section 1332 requires the amount in controversy to "exceed[s] the sum or value of $10,000...." *Id.* Moreover, by its own terms the amount in controversy must be "exclusive of interest and costs." *Id.* Thus, standing alone, the plaintiff's liquidated damages claim and his requests for interest and costs do not exceed $10,000 and therefore do not satisfy the amount in controversy requirement of section 1332. The question the Court must decide is whether either the plaintiff's claim for punitive damages or his claim for attorney fees is sufficient to boost the amount in controversy over the $10,000 hurdle mandated by section 1332.

■ It is axiomatic that federal courts are courts of limited jurisdiction. They may hear only those cases entrusted to them by a grant of power contained in either the Constitution or by Congress. *City of Kenosha v. Bruno,* 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973). It would therefore be an error of constitutional dimension for the court to entertain a claim not properly within its jurisdiction.

■ The formula for determining whether the amount in controversy is sufficient has been repeatedly stated by the Supreme Court. The test is stated as follows:

The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Mt. Healthy School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 276–77, 97 S.Ct. 568, 570–71, 50 L.Ed.2d 471 (1977) (citing *Red Cab Co.* as the leading case). Courts have construed this rule as a two pronged test. The sum claimed by the plaintiff will fail if it appears to have been made in bad faith. Even where good faith is present, dismissal will still be proper if the Court finds "to a legal certainty" that the claim is really for less than the jurisdictional amount. *See, e.g., Payne v. Government of D.C.,* 559 F.2d 809, 820 (D.C.Cir.1977). The burden of establishing the amount in controversy is upon the plaintiff as he is the party seeking jurisdiction. *See King v. Morton,* 520 F.2d 1140, 1145 (D.C.Cir.1975); *see also*

---

1. In his pleadings, the plaintiff noted that the defendant's motion to dismiss was accompanied by an affidavit. In response, the plaintiff also submitted an affidavit. Although the Court has the power to transform a motion to dismiss into a Rule 56 motion for summary judgment, *Sacks*

*v. Reynolds Sec., Inc.,* 593 F.2d 1234, 1239 (D.C. Cir.1978), the Court refuses to do so in this case. Because the Court is of the opinion that this case involves purely jurisdictional matters, it has not considered any material other than plaintiff's complaint.

*Smith v. Washington,* 593 F.2d 1097, 1100 (D.C.Cir.1978) (once defendant controverts plaintiff's assertion of proper jurisdictional amount, a factual issue arises and the burden is upon the plaintiff to demonstrate that the requirement of amount in controversy is satisfied).

In his motion to dismiss, the defendant does not question the plaintiff's good faith belief that the amount in controversy satisfies the diversity statute. Likewise, the Court finds no reason to question this conclusion. Dismissal, then, is only appropriate if it appears to a legal certainty that the plaintiff's complaint does not satisfy the jurisdictional amount required by section 1332. The plaintiff may aggregate the two counts in his complaint in an effort to meet this requirement. *See* Fed.R.Civ.P. 18. Only if neither punitive damages nor attorney fees is recoverable under the law of the District of Columbia will dismissal be proper.

■ Punitive damages are generally not available in the District of Columbia where the plaintiff's gravamen is breach of contract. *See Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982). This rule remains true even if defendant's motive for breaching was willful, wanton, or malicious. *Id.; Minick v. Associates Inv. Co.,* 110 F.2d 267, 268 (D.C.Cir. 1940). Nevertheless, there is a narrow exception:

> The rule in this jurisdiction is that only where the alleged breach of contract " 'merges with, and assumes the character of, a willful tort' will punitive damages be available."

*Sere, supra,* 443 A.2d at 37.

Plaintiff would have the Court find this exception applicable to his request for punitive damages. In support, he sets out to demonstrate that the defendant's conduct rose to the level of a "willful tort." The plaintiff cites to no cases which define when a breach of contract assumes the character of a tort. Rather, the plaintiff argues *sui generis* that the defendant knew he had insufficient funds to cover the check tendered to the plaintiff and such knowledge made his breach willful, constitutes evidence of an intent to defraud, and so rises to the level of tort.[2]

Plaintiff's theory does not state the law. The notion of allowing punitive damages in a contract milieu was born in this jurisdiction in the case of *Brown v. Coates,* 253 F.2d 36, 39–40 (D.C.Cir.1958). In that case, the Court allowed punitive damages to be levied against a real estate broker who defrauded certain homeowners by having them enter into a contract of sale for their homes which did not compensate them for the equity in these homes. Although the Court did award punitive damages, it limited its holding to situations where,

> one trained and experienced holds himself out to the public as worthy to be trusted for hire to perform services for others, and those so invited do place their trust and confidence, and that trust is intentionally and consciously disregarded, and exploited for unwarranted gain.

*Id.* at 36. In such circumstances, the Court held that the protection of the community demanded the imposition of punitive damages. Notwithstanding the salutary rule which *Brown* espouses, cases following it have sought to narrow its impact. In *Den v. Den,* 222 A.2d 647 (D.C.1966), the District of Columbia Court of Appeals returned to the issue of the propriety of punitive damages in contract actions. *Den* involved a husband's obligation to pay alimony to his wife. The evidence in the case suggested that the husband's decision to pay less than half the required alimony was purposeful and perhaps malicious. Nonetheless, the Court refused to impose punitive damages, holding motive irrelevant.

---

**2.** The defendant also labors to prove that the plaintiff wrongfully, and with full knowledge, passed a bad check in violation of D.C. Code § 22–1410 (1981). That section makes the "making, drawing, uttering, or delivering" of a bad check *prima facie* evidence of "an intent to defraud and of knowledge of insufficient funds." The Court questions the relevance of this statute, for section 22–1410 defines a criminal offense and therefore seems far removed from the controversy at issue.

 The case at bar in no way resembles *Brown*. Defendant Barnes was not a fiduciary. Thus, the community would in no way benefit from an imposition of punitive damages against him. This case instead parallels *Den*. The only wrong alleged by the plaintiff is ill motive. *Den*, however, makes clear that even if defendant's motive was malicious, such state of mind would not elevate defendant's conduct to a tort. Thus, although a court must consider claims for both actual and punitive damages when determining jurisdictional amount, *Kahal v. J.W. Wilson & Associates, Inc.*, 673 F.2d 547, 548 (D.C.Cir. 1982), punitive damages are unavailable to the plaintiff in this case.

The second question the Court must consider is whether it is sufficiently certain, as a matter of law, that the plaintiff cannot meet the jurisdictional minimum through a recovery of attorney fees. No case in this jurisdiction seems to have addressed this issue. As a matter of first impression, this Court finds that attorney fees are generally an improper vehicle for obtaining federal diversity jurisdiction.

 To bestow federal jurisdiction, section 1332 requires a "matter in controversy" to exceed $10,000. 28 U.S.C. § 1332(a). In construing the meaning of this statute, the Supreme Court has held that "the policy of the [diversity statute] calls for [ ] strict construction," since a narrow interpretation is essential to carrying out the constitutional imperative of limiting the jurisdiction of Article III courts. *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934). The recovery of attorney fees will nearly always be collateral to a substantive matter in controversy. Such is true in the instant case. Thus, jurisdictional principles militate against allowing attorney fees to satisfy section 1332's amount in controversy. Moreover, as a policy matter, allowing attorney fees to constitute the matter in controversy would hinge federal jurisdiction on the fee schedules of lawyers instead of the weight of the substantive issue before the court. At least one other jurisdiction has reached similar conclusions. *E.g. Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979) No case law to the contrary has been discovered.[3]

### III. CONCLUSION

In sum, the court finds that plaintiff Srour has not satisfied the amount in controversy requirement of the diversity statute, 28 U.S.C. § 1332, and accordingly his case must be dismissed.

---

**3.** The rule set out by the Court today is not absolute. There may be instances where attorney fees are a part of the matter in controversy and therefore may properly be considered as a part of the jurisdictional amount. Situations like this may arise when attorney fees are provided for by a contract in issue or by a statute in controversy. *See Velez, supra,* 599 F.2d at 474.