**PELLEGRIN & LEVINE, CHARTERED,** Appellant,

v.

**Phillip R. ANTOINE, et al.**

**No. 90–7187.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1992.

Decided April 24, 1992.

David J. Frantz, Washington, D.C., for appellant.

Eugene R. Fidell, Washington, D.C., for appellee, Vuong–Antoine.

Before: WALD, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

In the District of Columbia an action against a partnership must be brought in the names of the individual partners and each partner must be served individually. In this case, a Washington, D.C. law firm sued a two-person partnership in a fee dispute, but failed to heed this well-established rule, serving only one of the two partners. The fee dispute resulted in a consent judgment, signed only by the partner that was served. We are now asked by the firm to overturn the district court's order vacating the consent judgment as to the other, non-served partner. Finding no reason to depart from the standard rule of

service, we affirm the district court's order of vacation and its dismissal of the firm's suit against the non-served partner.

## I. BACKGROUND

In October, 1983, appellee Phillip Antoine formed a general partnership with his then wife, appellee Lan Thi Vuong–Antoine, for the purpose of applying to the Federal Communications Commission ("FCC") for a permit to construct and operate a new radio station in Hawaii. In May, 1984, while the Antoines were living apart with the intent of terminating their marriage,[1] Antoine and Vuong–Antoine entered into a fee agreement with the law firm that Antoine had retained to represent the partnership before the FCC, appellant Pellegrin & Levine, Chartered.[2] Vuong–Antoine's liability under the agreement was conditional and limited. The agreement provided that she would be liable for fees "if and only if the Antoines [were] the successful applicants for the FM construction permit, and then only for 50% of the total fees."[3]

In mid-December, 1986, Pellegrin & Levine withdrew as counsel for the Antoine general partnership and in January, 1987, filed this diversity action against both Antoine and Vuong–Antoine to recover over $150,000 in fees and unreimbursed costs. Pellegrin & Levine attempted to serve Antoine at his home in Honolulu, Hawaii and Vuong–Antoine both in Honolulu and in Anchorage, Alaska (at a location described by her in the FCC proceedings as a temporary residence). While the firm successfully served Antoine, it failed to serve Vuong–

Antoine. To this day, Vuong–Antoine has not been served in the fee proceeding.

Upon Pellegrin & Levine's withdrawal as counsel for the Antoine partnership, Robyn Nietert, a Washington, D.C. attorney specializing in communications law, assumed the representation of the partnership before the FCC. In addition, as an "accommodation" to Antoine, Nietert entered an appearance in this fee action. That appearance, however, was expressly confined to the representation of Phillip Antoine.[4] At no time was Vuong–Antoine represented before the district court, nor did Vuong–Antoine herself make an appearance before the district court.

Nietert participated in settlement negotiations between Pellegrin & Levine and Antoine, and on March 26, 1987, the parties entered into a settlement agreement.[5] One term of the agreement provided that Antoine would enter into a consent judgment establishing both his and Vuong–Antoine's joint and several liability for $100,000 in legal fees. Antoine signed the consent judgment, which was entered on April 6, 1987, in the same manner that he had signed the settlement agreement: "Individually and on Behalf of His Partner, Lan Thi Vuong–Antoine."

After obtaining the consent judgment, Pellegrin & Levine placed a lien on a house owned by Vuong–Antoine in Hawaii. Vuong–Antoine then moved, in February, 1988, to vacate the consent judgment on the grounds that she was never served with process and that "her former husband, defendant Phillip R. Antoine, signed

---

1. Their marriage was dissolved by the Superior Court of Alaska in November, 1985.

2. The agreement provided for the execution of an initial promissory note of $25,000 and 15 subsequent promissory notes as fees became due and payable.

3. Both Antoine and Vuong–Antoine signed the fee agreement and executed the first promissory note. While neither appellee has made any payment to Pellegrin & Levine, Antoine executed the 15 subsequent promissory notes totalling over $111,000. Vuong–Antoine did not sign any of the subsequent promissory notes.

4. The Notice of Appearance filed by Nietert requested the court to "enter my appearance as

attorney for the defendant, Phillip R. Antoine, in the above-entitled action." The above-entitled action, of course, listed both Phillip R. Antoine and Lan Thi Vuong–Antoine as defendants.

5. By the time the parties reached an agreement, Nietert had already withdrawn as Antoine's counsel in this action. By deposition she testified that she resigned as Antoine's counsel in this matter because she thought that she might have to serve as a material witness in the fee dispute and because civil litigation was not her specialty. Deposition of Robyn Nietert (October 7, 1988) ("Nietert Deposition") at 26.

the consent judgment on her behalf without her knowledge or authorization." The district court agreed and vacated the consent judgment as to Vuong–Antoine. The district court also dismissed Pellegrin & Levine's complaint against Vuong–Antoine, finding that the firm had failed to demonstrate "good cause" for its failure to serve her within 120 days of the filing of the complaint.

Pellegrin & Levine challenges both rulings. First, it argues that Antoine, as Vuong–Antoine's partner, had authority to consent to judgment on behalf of Vuong–Antoine, and that his consent constituted a waiver of Vuong–Antoine's objections to sufficiency of process. Brief for Appellant ("Appellant") at 11. Pellegrin & Levine also argues that even if Antoine lacked authority to enter into the consent judgment on Vuong–Antoine's behalf, Vuong–Antoine is now estopped from denying that authority because Pellegrin & Levine reasonably relied on Antoine's "apparent authority" to enter into the consent judgment on her behalf, and because Vuong–Antoine benefitted from the consent judgment and has not acted in good faith in this proceeding. Finally, Pellegrin & Levine argues that the district court abused its discretion in dismissing the complaint as to Vuong–Antoine. Appellant at 18.

## II. Discussion

### A. Vacation of the Consent Judgment

1. *Antoine's Authority to Consent to Judgment on Vuong–Antoine's Behalf*

 Pellegrin & Levine recognizes the rule in the District of Columbia that in order to sue a partnership each partner must be individually served. *See Matson v. Mackubin*, 57 F.2d 941, 941–42 (D.C.Cir. 1932); *Affie, Inc. v. Nurel Enters., Inc.*, 607 F.Supp. 220, 221 (D.D.C.1984); *see also* 2 James Wm. Moore et al., Moore's Federal Practice ¶ 4.24, at 4–221 (2d ed.1988). It attempts to overcome its failure to follow the rule in this case by arguing that Vuong–Antoine waived any objection to insufficiency of service and therefore voluntarily subjected herself to the court's jurisdiction. *See Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 n. 42 (D.C.Cir.1987) (stating the basic rule that a party can waive objection to insufficiency of service). Clearly Vuong–Antoine never *expressly* waived objection; neither she nor an attorney on her behalf ever appeared before the district court. Rather, Pellegrin & Levine argues that Vuong–Antoine impliedly authorized Antoine to consent to judgment on her behalf and that therefore *his consent* waived *her objection* to insufficiency of service.

Assuming, without deciding, that one partner can authorize another to consent to judgment on her behalf,[6] and that such authorization can be implied from the conduct or acquiescence of the allegedly authorizing partner,[7] nothing in this record even remotely suggests that Vuong–Antoine authorized Antoine to consent to judgment on her behalf. Pellegrin & Levine first argues that because Vuong–Antoine was aware of both the complaint and the consent judgment but did not protest or challenge the consent judgment until ten months after its entry, she impliedly acquiesced in Antoine's representation of her interests. Pellegrin & Levine believes its argument of "authorization by acquiescence" is buttressed by the fact that even after Vuong–Antoine protested the

---

6. Pellegrin & Levine cites no controlling authority to support this proposition other than a passage in *Corpus Juris Secundum*, 49 C.J.S. *Judgments* § 174(b) (1947), relying on a single and aged state court case, *Coley v. Family Loan Co.*, 168 Tenn. 631, 80 S.W.2d 87 (1935).

7. The rule of implied authorization that Pellegrin & Levine would have us apply in this case is drawn from judicial treatment of *confessed*, not *consent* judgments. *See* Appellant at 14 (citing 59A Am.Jur.2d *Partnerships* § 764 at 615; *Mur-*

*ray v. Korshak*, 52 Ill.App.2d 119, 201 N.E.2d 737 (1964)). The parties do not address in any detail whether the difference between consent and confessed judgments warrants a differing rule regarding implied authorization. Pellegrin & Levine simply assumes that the implied authorization rule applies in the context of consent judgments, Appellant at 14, whereas Vuong–Antoine simply asserts, without elaboration, that consent and confessed judgments are not the same. Brief for Appellee at 11.

consent·judgment, she continued to assert the existence of her partnership with Antoine with respect to the FM license application and entered into a settlement of those proceedings with Antoine acting as her authorized agent. Appellant at 15.

█ We fail to see, however, how the conduct to which Pellegrin & Levine points leads to the conclusion that Vuong–Antoine impliedly authorized Antoine to consent to judgment on her behalf. The failure to object to a void judgment in and of itself certainly does not demonstrate approval of or acquiescence in that judgment. Vuong–Antoine's decision not to immediately challenge the consent judgment just as plausibly supports the inference that she believed it was invalid for lack of service and simply saw no need to challenge it *unless and until* Pellegrin & Levine attempted to enforce it. Nor does the fact that she authorized her partner to negotiate with the FCC support the conclusion that she also authorized him to consent to judgment on her behalf in the fee dispute. Members of a partnership typically are authorized to act on behalf of the partnership for purposes within the scope of partnership business. Were such general authorization sufficient to prove authorization to consent to a judgment, the rule requiring service on all partners would be meaningless. We decline to open such a gaping hole in the District of Columbia's long-established rule regarding legal actions against partnerships.

The second aspect of Vuong–Antoine's behavior from which Pellegrin & Levine attempts to derive implied authorization to Antoine to consent to judgment on her behalf does not even involve conduct by Vuong–Antoine at all. Pellegrin & Levine argues that Nietert's deposition testimony that *she* thought that Antoine had authority to consent to judgment on behalf of Vuong–Antoine supports the conclusion that Vuong–Antoine authorized Antoine to consent to judgment on her behalf.

Nietert's testimony is, in fact, somewhat equivocal. She stated only that she *assumed* that Antoine had authority to bind the partnership. Nietert Deposition at 47. More importantly, however, considering the fact that Nietert never met Vuong–Antoine, *id.* at 6–7, never even *spoke* to Vuong–Antoine, *id.*, and entered her appearance in this case solely on behalf of Antoine, Nietert's perception as to Antoine's authority is only remotely, if at all, relevant to the question of whether Vuong–Antoine did indeed authorize Antoine to consent to judgment on her behalf. In sum, we find no probative evidence to support ·the proposition that Vuong–Antoine, through her conduct or acquiescence, impliedly authorized Antoine to consent to judgment on her behalf.

### 2. *Vuong–Antoine's Estoppel to Object to Nonservice of Process*

Pellegrin & · Levine also argues that Vuong–Antoine is estopped from denying Antoine's authority to consent to judgment on her behalf because Pellegrin & Levine relied on Antoine's "apparent authority" to do so, she benefitted from the consent judgment, and she acted in bad faith in originally denying the existence of a partnership with Antoine.

█ As a general matter, one partner can be estopped from denying another partner's authority where a third party has ·reasonably relied on the apparent authority of the acting partner and has been misled by the conduct of the non-acting partner. *See generally* 59A AM.JUR.2d *Partnership* § 277 at 384. Pellegrin & Levine's attempt to apply the doctrine of apparent authority to this case, however, is unavailing. The only relevant conduct engaged in by Vuong–Antoine was her failure to immediately object to the consent judgment and her continued authorization of Antoine to act on her behalf before the FCC. As a preliminary matter, it is not entirely clear to us how *post*-consent judgment conduct could ·have led· Pellegrin & Levine to believe that Antoine had authority to enter into the consent judgment on her behalf in the first place. But more importantly, even if post-judgment conduct could in some circumstances be relevant in determining apparent authority, for the reasons already discussed, Vuong–Antoine's passive conduct here could not "reasonably"

have supported the inference that Antoine had the requisite authority to consent to judgment on her behalf.

Pellegrin & Levine's assertion of "reasonable reliance" is made even more implausible by the fact that Antoine wrote to Pellegrin & Levine prior to the filing of the complaint informing the firm that he could not "predict with any reliability what if any action [Vuong–Antoine] might take or not take" and that he could not "tell if her support will be forthcoming or withdrawn." Letter from Phillip Antoine to Pellegrin & Levine (Dec. 27, 1986) at 4. Moreover, as the district court aptly noted, Pellegrin & Levine could not reasonably have assumed that Nietert represented both Antoine and Vuong–Antoine in this case. The settlement negotiations in which Nietert participated purported to adjust the liabilities of Antoine and Vuong–Antoine in a way that was materially detrimental to Vuong–Antoine's interests. Her exposure to liability for attorneys' fees changed from one limited in amount and conditional on the issuance of the construction permit to one that was unconditional and of a considerably higher dollar amount. In light of an obvious conflict of interest between the former spouses as to proportional liability, Pellegrin & Levine's purported belief that Nietert spoke for both Antoine and Vuong–Antoine was anything but reasonable.

Nor are we persuaded by appellant's alternative grounds for asserting Vuong–Antoine's estoppel in this case. While Vuong–Antoine did "benefit" to some degree from the consent judgment in that Pellegrin & Levine dropped its original claim and turned over the Antoine files to the partnership's new counsel, we fail to see how this "benefit" supports a claim of estoppel against Vuong–Antoine's challenge to the consent judgment. There is certainly no basis in the record for concluding that Vuong–Antoine withheld any overt disapproval of the consent judgment until after the FCC proceeding concluded so as to reap the benefit of the consent agreement without bearing any of its costs. The record demonstrates that she first protested the consent judgment in February, 1988, several months *before* the FCC settlement in

May, 1988. Moreover, we do not think that her prior disavowal of any partnership with Antoine in the FCC proceeding warrants a finding that Vuong–Antoine acted in such bad faith as to now estop her from challenging the consent judgment in the ancillary fee matter.

In sum, Pellegrin & Levine, a law firm, failed to heed a basic rule of law requiring that process be served on each individual partner. Assertions of implied authority and estoppel notwithstanding, we find no reason to excuse that failure and we thus affirm the district court's vacation of the consent judgment as to Vuong–Antoine.

B. Dismissal of the Complaint

■ In addition to vacating the consent judgment, the district court *sua sponte* dismissed appellant's complaint against Vuong–Antoine on the grounds that appellant had not shown a "good cause" justification for its failure to serve her within 120 days of the filing of the complaint. *See* FED.R.CIV.P. 4(j) (absent "good cause" excuse, action shall be dismissed if service is not effected within 120 days of filing of complaint). The district court found that in light of the established rule in the District of Columbia requiring service of process on all partners individually of which the law firm plaintiff must surely have been aware, its failure to serve Vuong–Antoine was nothing short of "inexcusable neglect." *Pellegrin & Levine, Chartered v. Phillip R. Antoine*, Civil Action No. 87–96, Order (D.D.C. Nov. 6, 1990) ("Order") at 3.

Appellant urges that ruling be reversed, arguing that it went to considerable expense and effort to serve Vuong–Antoine, that it suspended those efforts in the belief that Antoine had the requisite authority to represent Vuong–Antoine's interests, and that it reasonably believed that it had a valid judgment against Vuong–Antoine. In sum, appellant argues that:

> Because Pellegrin & Levine believed in good faith that they had a valid judgment against Vuong–Antoine, their decision to suspend efforts to serve her was

entirely justifiable and constituted good cause under FED.R.CIV.P. 4(j). Appellant at 19. Appellant also argues that dismissal is unduly harsh in this case because the applicable statute of limitations has now run on its claim against Vuong–Antoine.

A district court's determination that good cause has not been shown to justify a party's failure to effect service within the applicable time limit will be affirmed unless it is clearly an abuse of discretion. *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 83 (3d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Fournier v. Textron, Inc.*, 776 F.2d 532, 534 (5th Cir.1985); *Wei v. Hawaii*, 763 F.2d 370, 371 (9th Cir.1985). The record in this case supports no such conclusion.

Appellant's "good faith" reliance argument misses the mark by a mile. Regardless of whether Pellegrin & Levine actually believed that it had a valid judgment against Vuong–Antoine, in order to make out a case of good faith reliance that belief has to be *reasonable*. For reasons already elucidated, Pellegrin & Levine's belief was anything but. Finally, the fact that appellant's suit is now time-barred does not carry the day. The "good cause" inquiry under Rule 4(j) implicates the reason for failure to effect service, not the severity of the consequences. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1158 (6th Cir.1991) (dismissing complaint under Rule 4(j) despite fact that dismissal may render suit time-barred); *Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 879 n. 6 (3d Cir.1987) ("Despite the severity of such a result [dismissal after the running of the statute of limitations], courts ... seem unanimously to have held that dismissal for service made more than 120 days after filing is required under the rule absent a showing of good cause.") (citing cases); *DeLoss v. Kenner Gen. Contractors, Inc.*, 764 F.2d 707, 711 n. 5 (9th Cir. 1985) ("Congress recognized the possibility that dismissal after the expiration of a statute of limitations could bar a plaintiff from bringing an action.").

In any event, the equities here are not onesided. Appellant knew in February, 1988, before the statute of limitations had run, that Vuong–Antoine objected to the consent judgment on grounds of lack of service. Yet it took no action to preserve its claim, either by moving the court to enlarge the period for service, *see* FED. R.CIV.P. 6, or by renewing its efforts to serve Vuong–Antoine. Instead, it put all its eggs in one basket: it assumed that Vuong–Antoine was bound by the consent judgment despite its failure to effect service upon her. Either it failed to appreciate the ramifications of losing on that argument, *i.e.*, dismissal, or it made a strategic decision that filing a motion to enlarge or renewing efforts at service would suggest doubt about the validity of its underlying position. Neither scenario offers a compelling basis for relief.[8] Nearly a century ago Henry Adams wrote that a "woman who is known only through a man is known wrong."[9] Pellegrin & Levine has learned that lesson the hard way.

### III. CONCLUSION

For reasons given, the order of the district court vacating the consent judgment and dismissing appellant's claim against Vuong–Antoine is

*Affirmed.*

---

**8.** Appellant makes much of the district court's error as to the date on which the complaint was filed. The district court erroneously found that the complaint had been filed in January, 1986, not January, 1987, and thus stated that appellant's attempts at service occurred more than one year after the complaint was filed when in actuality they occurred within two months of the filing of the complaint. Order at 2. While

that calculation is obviously mistaken, it in no way undermines the central premise of the district court's ruling: that under District law each partner had to have been individually served, and that Vuong–Antoine was not.

**9.** HENRY B. ADAMS, THE EDUCATION OF HENRY ADAMS 353 (Riverside Library ed. 1918) (1907).