**Jerome S. WAGSHAL, Plaintiff,**

v.

**Douglas V. RIGLER, et al., Defendants.**

**Civil Action No. 93–00817.**

United States District Court,
District of Columbia.

Nov. 26, 1996.

Jerome S. Wagshal, Rockville, MD, pro se.

Douglas V. Rigler, Washington, DC, pro se.

Julius Kaplan, Washington, DC, pro se.

Jonathan Russin, Russin & Vecchi, Washington, DC, pro se.

Dennis James, Jr., Washington, DC, pro se.

James W. Schroeder, Alexandria, VA, pro se.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on: (1) Plaintiff's unopposed motion to lift the stay imposed by the Court on May 10, 1995; (2) Defendants' motion to dismiss or, in the alternative, for summary judgment; and (3) Defendants' motion for sanctions. The Court heard arguments on the motions on November 4, 1996 and November 8, 1996.

## BACKGROUND

Plaintiff is an attorney appearing *pro se* in this matter. The Defendants are former partners of the law firm of Russin & Vecchi L.L.P., formerly Kaplan, Russin & Vecchi ("KRV"). The dispute stems from the parties' legal representation of Norcom Electronics Corporation ("Norcom").

There appears to be no significant disagreement about the factual setting in which this case arose. Plaintiff introduced Norcom to KRV as a potential client in August 1987. On August 24, 1987, KRV agreed to represent Norcom in litigation against Datacard Corp., Inc. ("Datacard") with Plaintiff playing an advisory role. Plaintiff drafted the resulting Norcom–KRV retainer agreement (the "Retainer Agreement") to incorporate lowered KRV hourly rates to be balanced against a success contingency fee for the Datacard litigation.

Simultaneously with the execution of the Retainer Agreement, Plaintiff signed a letter agreement to serve as a "common law employee" of KRV for the Datacard litigation (the "Employment Agreement"). The Employment Agreement provided that Plaintiff would receive 25% of KRV's reduced hourly fees and 50% of the success contingency fee for his work pursuant to the Retainer Agreement. The Employment Agreement did not specify whether the 50% portion of the success contingency fee to be paid to Plaintiff would be net or gross of receipts from Norcom.

In September 1990, Norcom settled the Datacard litigation without the participation of KRV. Norcom refused to pay the success contingency fee to KRV. KRV took the position that it was entitled to the success contingency fee and arbitrated the fee dispute with Norcom. Plaintiff participated in the arbitration on the side of KRV and testified before the arbitrator with respect to the calculation of the claim against Norcom. The arbitrator awarded KRV $139,777 plus interest and costs. Norcom unsuccessfully contested the award in a law suit in the state of Connecticut, an action which required KRV to hire outside counsel.

KRV filed a motion in this Court to reduce to judgment its arbitration award from the Datacard litigation. The Court entered judgment on January 30, 1992 in the amount of $139,717, plus fees and interest (the "Award"). Norcom claimed it was unable to satisfy the Award immediately and gave KRV a promissory note calling for an initial payment of $44,512.14 and monthly payments with interest on the balance. KRV gave Plaintiff a copy of the promissory note and the payment schedule.

On April 29, 1992, KRV informed Plaintiff in writing of its intention to deduct $6,702.19 in out-of-pocket expenses and $23,585 in attorney fees (a total of $30,287) from the Award prior to calculating Plaintiff's 50% share. KRV claimed that it had incurred those costs in connection with arbitrating, defending and enforcing the Award, and that Plaintiff's 50% share of the Award would be calculated as net, rather than gross, of receipts. KRV simultaneously offered to arbitrate any dispute concerning Plaintiff's share of the Award before a mutually acceptable arbitrator. The gross payments to Plaintiff by KRV and its successor firm since August 1992 pursuant to the success contingency fee have exceeded $60,000; total payments to Plaintiff by KRV pursuant to the Employment Agreement have exceeded $119,000.

Plaintiff filed this complaint in the United States District Court for the District of Columbia in April 1993 and subsequently filed an identical suit in the Superior Court for the District of Columbia ("Superior Court"). He claims to have filed the two identical actions because of admitted uncertainties regarding the statute of limitations on his claims and the jurisdiction of federal courts in this matter.

**12**

In early 1995, the Superior Court dismissed Plaintiff's identical suit on the merits and Plaintiff appealed the dismissal to the District of Columbia Court of Appeals (the "DC Court of Appeals"). On May 10, 1995, this Court ordered that this action be stayed pending resolution of the appeal from the Superior Court dismissal. In that order, the Court stated that "the parties also agree that if the D.C. Court of Appeals affirms the Superior Court's decision then Plaintiff will have no choice but to dismiss this action with prejudice."

On November 19, 1996, after this Court had heard argument from the parties on the motions and was finalizing this Memorandum Opinion, the D.C. Court of Appeals issued its decision on Plaintiff's appeal. It affirmed the decision of the Superior Court, rejecting Plaintiff's appeal.

Plaintiff's complaint in this Court alleges that the Defendants, his principal interlocutors from KRV, had engaged in fraud, breach of fiduciary duty and breach of contract.[1] The complaint alleges that Defendants failed to make a full accounting to him of all payments by Norcom to KRV, as they were obligated to do by the D.C. Rules of Professional Conduct, and he also makes a *quantum meruit* claim. He seeks compensatory damages for the amount that he claims remains owed to him pursuant to the Award, costs, and punitive damages of $750,000. Plaintiff brought his motion to lift the stay before this Court because his appeal of the decision of the Superior Court had been pending before the D.C. Court of Appeals for many months. Not hearing from the D.C. Court of Appeals for this period of time, he asked this Court to proceed with the lawsuit.

While Defendants did not oppose Plaintiff's motion to lift the stay in this Court, they do move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP") for lack of

jurisdiction or, in the alternative, for summary judgment. Defendants argued that the Court lacks diversity jurisdiction in this matter since: (1) there is not complete diversity among the parties to the dispute and (2) the amount in controversy here is less than $50,000. 28 U.S.C. § 1332. Defendants also moved for sanctions pursuant to Rule 11 of the FRCP.

## ANALYSIS

As a result of the D.C. Court of Appeals' decision of November 19, 1996, Plaintiff's motion to lift the stay imposed by the Court on May 10, 1995 has been rendered moot. The Court stated in its May 10, 1995 order that the parties agreed that Plaintiff would have no choice but to dismiss this action with prejudice if the D.C. Court of Appeals were to affirm the Superior Court's decision in the parallel case, as it has now done. It is the judgment of this Court that Plaintiff is now barred from asserting his claims on grounds of *res judicata*. What is more, even if *res judicata* did not apply, this Court would be bound to dismiss this complaint for lack of jurisdiction.

### 1. Plaintiff's Action Must be Dismissed for Lack of Jurisdiction

Defendants cite two jurisdictional defects in the complaint: (1) lack of complete diversity among the parties and (2) Plaintiff's failure to meet the $50,000 amount in controversy requirement.

■ *Diversity.* Defendants claim that both Defendant Rigler and Plaintiff are domiciliaries of Maryland, thereby causing diversity to be less than complete in the complaint. Diversity jurisdiction pursuant to 28 U.S.C. § 1332 requires complete diversity among the parties. They point to a number of facts which would provide evidence of Plaintiff's status as a Maryland domiciliary.[2]

---

1. Plaintiff argued in his papers that he must sue the five Defendants individually rather than KRV because, under the law of the District of Columbia, the partnership cannot be sued. He cites *Pellegrin & Levine, Chtd. v. Antoine,* 961 F.2d 277 (D.C.Cir.1992). The Court takes no position on Plaintiff's interpretation of the law of the District of Columbia.

2. In particular, Defendants argue that Plaintiff has lived for a number of years in a Rockville, Maryland home; he has conducted his business from there; he has requested that he be contacted there; he has had all payments pursuant to the Employment Agreement mailed there; and he has deposited the checks in a Maryland bank.

While Plaintiff claims to be a domiciliary of Florida, Defendants maintain that Plaintiff's situation is essentially identical to that of the defendant in *Galva Foundry Co. v. Heiden*, 924 F.2d 729 (7th Cir.1991), where the Court found that the Defendant's claim of domicile was permeated by an "aura of fraud" since he had not made any change in the "center of gravity" of his lifestyle.

It is certainly true that Defendants' contacts with Plaintiff place him in Maryland. Nonetheless, Plaintiff claims that he moved to Florida and changed his domicile in 1988, prior to the execution of the Employment Agreement. His affidavit points to a number of generally accepted indicia of domiciliary status, including a formal, sworn declaration of domicile in Florida; voting registration; home ownership; ownership of personal property in Florida, including an automobile; a Florida driver's license; bank accounts and club membership. *See* MOORE'S FEDERAL PRACTICE (2d ed.) at 788. Plaintiff admits to having made extended visits to Maryland, which he attributes to health, financial and personal reasons.

■ Any analysis of domicile must be fact-specific. Given the fact that he has presented substantial indicia of a Florida domiciliary, Plaintiff is entitled to a presumption that he has established a Florida domicile and has not formed an intention to abandon it.

■ While Plaintiff has spent substantial time in Maryland since 1988, prolonged absence from one's domicile is not determinative of abandonment. *See*, in particular, *Willis v. Westin Hotel Co.*, 651 F.Supp. 598 (S.D.N.Y.1986); *Pace v. District of Columbia*, 135 F.2d 249 (D.C.App.1943). In *Willis*, a 1986 New York case, the plaintiff sought to preserve her status as a Florida domiciliary although she had not stayed in Florida since 1977 and had resided in Manhattan for approximately two years. The court sustained the plaintiff's position on the grounds that she had a Florida driver's license and a Florida bank account, and was required to remain in New York for health reasons. Similarly, in this case, Defendants have not

rebutted plaintiff's presumption in favor of his status as a Florida domiciliary.

The Court is not prepared to dismiss this lawsuit on jurisdictional grounds for a failure of diversity.

■ *Amount in Controversy.* Defendants also argue that the amount in controversy is well below the $50,000 required for diversity jurisdiction by 28 U.S.C. § 1332. In particular, they argue that Plaintiff has made a colorable claim for no more than his purported share of the $30,287 in expenses that KRV withheld from the amount used to calculate his share of the Award, or $15,144. They contend that this action is no more than a basic contractual dispute. Defendants refute Plaintiff's claim to punitive damages. Defendants advise that, under the law of the District of Columbia, "punitive damages will not lie [in a breach of contract action], even if it is proved that the breach was willful, wanton, or malicious." *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37; *Bedell v. Inver Housing, Inc.*, 506 A.2d 202, 206 (D.C.1986). *See* also *Kahal v. J.W. Wilson & Associates, Inc.*, 673 F.2d 547, 548 (D.C.Cir.1982) ("[I]n the absence of some aggravating conduct, punitive damages are not recoverable in a contract action simply because defendant breached with a bad intent.").

Plaintiff claims three bases for meeting the amount in controversy requirement: (1) he cannot be sure that the disputed amount under the Employment Agreement really is just $15,144 without further discovery; (2) his various tort allegations, described above, establish a colorable claim for $750,000 in punitive damages; and (3) the Defendants engaged in "egregious conduct" which justifies the imposition of punitive damages regardless of whether this case is considered to be an action in contract or tort.

Plaintiff has no basis for claiming that the disputed amount under the Employment Agreement could be substantially greater than $15,144. The Court has examined the records of KRV's receipts from Norcom made available to Plaintiff and finds them to be quite reasonable and complete. There is no evidence of "hidden" funds or any short-

Defendants also point out that Plaintiff is a member of the D.C. Bar but not the Florida bar.

changing in the periodic payments made to Plaintiff pursuant to the Employment Agreement; With respect to the Award, the disputed sum could only be greater than $15,144 if Norcom paid more to KRV than the Court required in its judgment and order of January 30, 1992—an unlikely proposition.

■ Plaintiff has no colorable tort claim, either. This was the specific holding of the D.C. Court of Appeals in its November 19, 1996 decision. While that decision is determinative, it is clear that a subsequent breach of contract does not give rise to a claim of fraud unless fraudulent intent existed at the time of the contract. *One–O–One Enterprises, Inc. v. Caruso*, 668 F.Supp. 693, 699 (D.D.C.1987), *aff'd*, 848 F.2d 1283 (D.C.Cir. 1988). The parties entered into the Employment Agreement in August 1987, but the dispute with Norcom that led to the Award did not arise until September 1990. It is simply not reasonable to conclude that Defendants could have formulated an intent to defraud Plaintiff in August 1987 with respect to the future dispute over the success contingency fee. Defendants could not have known that they would have to litigate to get the success contingency fee—and it is unlikely that KRV would have taken on Norcom as a client if they had known.

Plaintiff has not established a claim for breach of fiduciary duty by Defendants, or even that a fiduciary relationship existed between him and KRV. Plaintiff drafted and executed the Employment Agreement, which can only be interpreted as an employment contract. His own exhibits refer to his status as an employee. Thus, KRV owed Plaintiff no special duty to provide him with anything other than what was provided: timely and accurate payments, which included a "Statement of Account" and disclosed all deductions.

Plaintiff also argues that since the disputed "costs and expenses" were, primarily, KRV's attorney fees in securing the Award,

Plaintiff should be viewed as having been "charged" for such attorney fees, and should be treated as KRV's client. This inventive argument overlooks the fact that Plaintiff has, to this point, received in excess of $119,-000 pursuant to the Employment Agreement as an employee. He cannot now so easily shift his status. While courts have also been stern in policing misappropriation of funds in relations between lawyers, there is no evidence of any such misappropriation here.

Plaintiff further argues that the Defendants engaged in "egregious conduct" which justifies the imposition of punitive damages regardless of whether this case is considered to be an action in contract or tort. As the basis for such egregious conduct, Plaintiff points to Defendants' alleged violations of several of the D.C. Rules of Professional Conduct, most notably Rule 1.15 relating to a lawyer's obligations in safekeeping property.

■ But violation of a Rule of Professional Conduct does not independently give rise to a cause of action, nor does it create a presumption that a legal rule has been violated.[3] Notably, KRV appears to have complied with Rule 1.15. Upon receiving payments from Norcom, KRV promptly notified Plaintiff and promptly delivered to him the funds it believed he was entitled to receive along with a full accounting (Rule 1.15(b)). When it became evident that there was a dispute regarding the deduction for costs, KRV "suggest[ed] means for prompt resolution of the dispute, such as arbitration." (*See*, comment 3 to Rule 1.15).

For the reasons cited above, Plaintiff cannot establish a colorable claim for an amount substantially in excess of $15,144, so he cannot meet the $50,000 amount in controversy requirement for diversity jurisdiction to attach.[4] Defendant's motion to dismiss for lack of jurisdiction is granted.

---

3. *See*, Order of District of Columbia adopting the Rules, March 1, 1990, "Scope" note, para. 4.

4. It should also be mentioned that Plaintiff has made a *quantum meruit* claim that does not solve Plaintiff's amount in controversy shortcoming. Plaintiff cannot demonstrate that *quantum meru-*

it would apply to a contingency payment pursuant to an express contract, or that any such claim would be sufficiently large in this case. The Court also notes that, in its opinion of November 19, 1996, the D.C. Court of Appeals also rejected Plaintiff's *quantum meruit* claim.

## 2. Defendants' Motion for Sanctions is Denied

 Defendants moves for sanctions pursuant to Rule 11 of the FRCP. They claim two bases for the motion: (1) Plaintiff's filing of a duplicate suit in Superior Court; and (2) Plaintiff "trumped up" claim for punitive damages arising out of a fraud count which is unsustainable as a matter of law in the District of Columbia.

Rule 11 sanctions are not to be imposed lightly and the Court finds insufficient basis for such sanctions here. Plaintiff claims to have filed the identical action in Superior Court as a protective suit to avoid the possible bar of the one-year statute of limitations on fraud. He cites relevant authority: "A plaintiff ... has it within his power to avoid loss of his cause of action by filing a protective suit in the court where jurisdiction indisputably lies—in this case, just across the plaza." *Bond v. Serano,* 566 A.2d 47 (D.C.App.1988) (Farrell, J., concurring at 55). Plaintiff also sought to stay the action in Superior Court. This Court cannot conclude that the action filed has been "presented for any improper purpose" as Rule 11(b) requires.

### CONCLUSION

Plaintiff's motion to lift the stay imposed by the Court on May 10, 1995 has been rendered moot by the D.C. Court of Appeals' decision of November 19, 1996. It is the judgment of this Court that Plaintiff is barred from raising his tort and *quantum meruit* claims on grounds of *res judicata.* The Court grants Defendants' motion for summary judgment for lack of jurisdiction as an alternate grounds for dismissal. The Court denies Defendants' motion for sanctions pursuant to Rule 11. An appropriate order is attached hereto.

### ORDER

The Court has considered (1) Plaintiff's unopposed motion to lift the stay imposed by the Court on May 10, 1995; (2) Defendants' motion to dismiss or, in the alternative, for summary judgment; and (3) Defendants' motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, as well as opposition thereto, and argument by the parties. The Court notes that Plaintiff's motion to lift the stay has been rendered moot by the opinion of the D.C. Court of Appeals of November 19, 1996.

It is hereby **ORDERED** that Defendants' motion to dismiss is **GRANTED** on the basis of *res judicata* and for lack of jurisdiction.

It is **FURTHER ORDERED** that Defendants' motion for sanctions is hereby **DENIED.**