### FEDERAL FIRE PROTECTION CORP., Plaintiff,

v.

### J.A. JONES/TOMPKINS BUILDERS, INC., Defendant.

### Civil Action No. 02–1854(JMF) ECF.

United States District Court,
District of Columbia.

June 16, 2003.

Philip C. Jones, Philip Clark Jones & Associates, Annapolis, MD, for Plaintiff.

Robert J. Symon, Spriggs & Hollingsworth, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me by Judge Walton for all purposes including trial pursuant to LCvR 73.1(a). Currently pending before me is *Defendant J.A. Jones/Tompkins Builders, Inc.'s Motion To Dismiss For Lack Of Subject Matter Jurisdiction* ("D.Mot."). For the reasons set forth herein, defendant's motion to dismiss will be denied.

## BACKGROUND

This is a breach of contract and tort action by an allegedly terminated subcontractor against a general contractor, which arises out of the construction of a new multi-use commercial and residential complex known as the Jefferson at Penn Quarter, 616 E Street, NW, Washington, DC.[1] By written agreement, J.A. Jones/ Tompkins Builders, Inc., ("Tompkins") contracted with the owner at the Jefferson for the construction of the Penn Quarter project ("Project"). Complaint, ¶ 5. Plaintiff alleges that in mid-February 2002, during the course of a meeting with Federal Fire Protection Corporation ("Federal") held at Tompkins' office concerning another project, Tompkins solicited a bid from Federal for the sprinkler system portion of the project. *Id.* at ¶ 6. At that time, Tompkins provided to Federal the plans and specifications necessary to prepare a bid, and on February 25, 2002, Federal submitted its written bid to Tompkins' solicitation "for the work encompassed by Division 15 of the Specifications, Fire Protection, as modified by clarifications and exclusions contained in Federal's written proposal." *Id.*

In response to Federal's bid, a representative of Tompkins' purchasing department contacted Federal, advising them that their suggested price was in excess of the amount Tompkins had budgeted for the Division 15 work. *Id.* at ¶ 7. Subsequently, over a period of roughly two months, the parties engaged in negotiations regarding the price of the work, the scope of the work, and various other details. *Id.* at ¶ 8. Federal alleges that at the close of negotiations, Tompkins' purchasing manager, John G. Madden ("Madden"), made a firm offer for the performance of the agreed scope of work to start immediately at a price of $1,225,000. *Id.* Federal further alleges that its President, Robert Doffermyer, then responded with a counter-

---

**1.** In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sanders v. Veneman,* 131 F.Supp.2d 225, 228 (D.D.C.2001). *See, e.g., Pitney Bowes v. United States Postal Serv.,* 27 F.Supp.2d 15, 19 (D.D.C.1998).

offer, stating that if Tompkins would "add $5,000 for all the grief of negotiations they would have a deal." *Id.* Federal asserts that Madden accepted that offer without qualification or reservation and that the parties "shook hands." *Id.* Tompkins, however, continues to contend that no contract was formed between the parties.

Subsequent to the events described above, Tompkins apparently listed Federal in its pre-printed subcontractor transmittal form as its sprinkler subcontractor. *Id.* at ¶ 10; D. Mot. at Exhibit A. Thereafter, Tompkins submitted to Federal various documents concerning changes to the scope of the work to be performed by Federal. Complaint, ¶ 10. However, on March 27, 2002, Madden, on behalf of Tompkins, sent Federal a letter entitled "Letter of Intent," which failed to acknowledge that the parties had already entered into an enforceable contract for the performance of the Division 15 work. *Id.* at ¶ 11. Federal refused to sign the letter and continued to proceed with its work in reliance on the oral contract it believed to have entered into with Tompkins. Consequently, Tompkins sent a proposed written subcontract agreement to Federal that plaintiff contends did not accurately reflect the contract the parties had orally negotiated. *Id.* at ¶ 14–15.

## LEGAL STANDARD

■ District courts have original jurisdiction in cases where the amount in controversy exceeds the sum of $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1).[2] Both requirements must be met in order for a federal court to assume jurisdiction of the case. Diversity of the parties is uncontested. Thus, "the sum claimed by the plain-

tiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Additionally, dismissal is proper where it appears to a legal certainty that the claim is for less than the jurisdictional amount. *Id.*

There are three situations which clearly meet the legal certainty standard in order to defeat the court's subject matter jurisdiction: (1) when the terms of a contract limit the plaintiff's possible recovery; (2) when there is a substantive rule of law or measure of damages which limits the amount of money recoverable by the plaintiff; and (3) when there are independent facts which show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction. 14B CHARLES A.WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3702 (3rd ed.1998). *See e.g., Rosenboro v. Kim,* 994 F.2d 13 (D.C.Cir.1993)(applying the legal certainty test).

■ Furthermore, in an action based upon diversity jurisdiction, the federal courts must defer to state law, or in this case the law of the District of Columbia, in order to determine the nature and extent of the right plaintiff is seeking to enforce. *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 352–53, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); *Kahal v. J.W. Wilson Assoc., Inc.,* 673 F.2d 547 (D.C.Cir.1982). This includes applying the forum's laws on special and punitive damages. *Wagshal v. Rigler,* 947 F.Supp. 10 (D.D.C.1996).

## ANALYSIS

In the instant case, defendant first denies that any contract was formed between

---

**2.** All references to the United States Code are to the current electronic version on Lexis and Westlaw.

the parties and denies that any amounts are due to plaintiff. D. Mot. at 1. Alternatively, defendant argues that, assuming a contract did exist between the parties, plaintiff's claim is essentially a breach of contract action, disallowing the recovery of punitive damages, and thereby, limiting plaintiff's recovery to $65,000 in actual damages. *Id.* at 3–4. Moreover, plaintiff claims $315,000 in lost profits and unabsorbed overhead, which defendant contends is specifically excluded by the terms of the "proposed subcontract." *Id.;* Exhibit A at ¶¶ 7, 9.

Plaintiff, however, insists upon the existence of an oral contract that antedates the proposed subcontract. It is plaintiff's position that the contract between the parties was unjustly breached at a time when plaintiff was fully able to perform its part of the bargain and had been doing do for five months. *Plaintiff's Response To Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction (With Points And Authorities)* ("P.Opp.") at 5. Furthermore, plaintiff contends that "it is not crucial for jurisdictional purposes what the exact nature of such damages might be . . . [but] the total amount of damages set forth in the complaint." *Id.*

■■ In its complaint, plaintiff asserts that the total damages incurred as a result of the alleged breach of contract are $380,000 and that punitive damages in the amount of $1 million should be assessed for conversion of property. Complaint, ¶¶ 26, 31. As stated in *St. Paul Mercury,* 303 U.S. 283, 58 S.Ct. 586 (1938), "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* at 288, 58 S.Ct. 586. However, the inability of plaintiff to recoup an amount sufficient to give the court jurisdiction does not demonstrate bad faith or "oust the jurisdiction." *Id.* at 289, 58 S.Ct. 586.

Here, defendant has not asserted facts to support a claim of bad faith. Thus, the critical issue is not whether a contract was formed, but whether the complaint states a valid claim for punitive damages.

■ In determining jurisdictional amount, a court must consider claims for both actual and punitive damages. *Bell v. Preferred Life Assurance Society,* 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); *Kahal v. J.W. Wilson Assoc., Inc.,* 673 F.2d 547, 548 (D.C.Cir.1982). Where the basis of the complaint is a breach of contract, it is the general rule in the District of Columbia that punitive damages are not recoverable, even if it is proved that the breach was willful, wanton, or malicious. *Den v. Den,* 222 A.2d 647, 648 (D.C.App.1966); *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.App.1982). In the District of Columbia, only where the alleged breach of contract "merges with, and assumes the character of, a willful tort" will punitive damages be available. *Sere v. Group Hospitalization, Inc.,* 443 A.2d at 37. *See also Brown v. Coates,* 253 F.2d 36, 39 (D.C.Cir.1958); *Den v. Den,* 222 A.2d at 648. *Cf.* RESTATEMENT (SECOND) OF CONTRACTS § 355 (1981)("Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable."). However, punitive damages are not recoverable in a breach of contract action merely because the defendant breached in bad faith. *Kahal v. J.W. Wilson Assoc., Inc.,* 673 F.2d at 548; *Den v. Den,* 222 A.2d at 648.

■ In support of its claim for punitive damages, plaintiff asserts that defendant's conduct in retaining "for their own use and benefit certain hardcopy sets of shop drawings" prepared by Federal rose to the

level of a conversion[3] of its property. Complaint, ¶ 30–31; P. Opp. at 3–4. Defendant, however, argues that plaintiff's conversion claim is nothing but a breach of contract claim clothed in a tort claim's robe. D. Mot. at 4; *Reply To Plaintiff's Response To Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction* at 3. I disagree. In its complaint, plaintiff distinctly separates its breach of contract claim from its conversion claim.

It is first alleged that both plaintiff and defendant entered into an oral agreement for the construction of a sprinkler system for the Project, that the construction work began, and that the relationship between the two parties subsequently fell apart when the agreement was to be reduced to writing. Notwithstanding its breach of contract claim, plaintiff also alleges that, *after* the wrongful termination of the contract, defendant intentionally converted its property when it refused to pay for the drawings, but continued to use them for the construction of the sprinkler system with another subcontractor. Complaint, ¶ 29–30. *See* RESTATEMENT (SECOND) OF TORTS § 237 (1965)("One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for its conversion. The conversion consists in the unlawful detention of the chattel, and not in the manner in which possession was originally acquired."). This allegation is clearly sufficient to justify an award of punitive damages for the intentional tort of conversion and, therefore, dismissal is improper. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. at 288–89.

Alternatively, defendant raises the argument that plaintiff's claim for lost profits and unabsorbed overhead is excluded by the terms of the unsigned, proposed subcontract. D. Mot., Exhibit A at ¶¶ 7, 9. Defendant maintains that no contract existed between the parties, but nevertheless contends that the very terms of this so-called "nonexistent" subcontract governs plaintiff's recovery of damages. D. Mot. at 3–4. While that may or may not be true, lost profits are generally recoverable in a breach of contract action in the District of Columbia. *Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 832 (D.C.App.1972), *cert. denied*, 409 U.S. 1049, 93 S.Ct. 523, 34 L.Ed.2d 501 (1972)(as amended on denial of rehearing en banc). It has been previously determined that "[t]he fact that the defendant may have a good defense against the claim does not affect the determination of the amount in controversy." *QNE Int'l, Inc. v. Haar Indus.*, 1988 WL 110605, at * 1 (D.D.C. Oct.11, 1988)(*citing St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. at 289, 58 S.Ct. 586). Plaintiff has thus sufficiently set forth its claim for lost profits and unabsorbed overhead and it is, therefore, improper to dismiss this action on jurisdictional grounds. *See* P. Opp. at 5.

## CONCLUSION

The allegation that defendant converted plaintiff's property is clearly sufficient to justify an award of punitive damages and, therefore, dismissal is improper. 28 U.S.C. § 1332(a)(1). Additionally, plaintiff has stated its claim for lost profits to a legal certainty, meeting the statutory minimum required for federal jurisdiction. *Id.*

---

**3.** The tort of conversion is defined as an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other full value of the chattel. *See* RESTATEMENT (SECOND) OF TORTS § 222A (1965).

An Order accompanies this Memorandum Opinion.

### ORDER

Pursuant to the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that *Defendant J.A. Jones/Tompkins Builders, Inc.'s Motion To Dismiss For Lack Of Subject Matter Jurisdiction* [# 11] is **DENIED.**

**SO ORDERED.**